(No. 38695.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JAMES McCASLE, (otherwise called JAMES McCASTLE,) Appellant.

*Opinion filed November 14, 1966.*

554

ALLEN J. POTTS, of Chicago, (DARIO A. GARIBALDI, of counsel,) appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

James McCastle and Willie Lee Thaddic were convicted of robbery while armed with a dangerous weapon after a joint bench trial in the circuit court of Cook County. Each defendant was sentenced to imprisonment for a term of 3-5 years. This review sought by McCastle alone is principally concerned with the argument that the trial court committed reversible error in failing, *sua sponte,* to appoint separate counsel to represent him during the trial. Both McCastle and Thaddic were represented by the same court-appointed public defender.

Warner Foster, a taxicab driver for the Abernathy Cab Company, testified that shortly before 12:30 A.M. on May 5, 1963, he stopped his vehicle and counted his money. He possessed nine one-dollar bills and $1.35 in change. He thereafter drove around looking for a fare and was hailed by two men, identified by him at the scene of defendant's arrest and during the trial as McCastle and his co-defendant.

The men entered the taxi and informed Foster of their destination. After proceeding for six or seven blocks Thaddic grabbed Foster around the neck, brandished a pistol, and demanded money. McCastle commenced a search through the driver's pockets but was unable to search him thoroughly in the car. The two men then ordered him out and completed the search in an alley, taking all of his money, and then allowing him to leave. He returned to his taxicab and drove directly to the Monroe Street police station.

Officer Charles Younger and Foster returned to the scene of the crime and toured the area, spotting the two defendants crossing a street. When a Chicago Transit Authority bus came between the squad car and the two men, they disappeared from view, but within ten minutes were apprehended a few blocks away by other police officers. The taxi driver identified the two men, McCastle and Thaddic, as the robbers.

Police found a loaded gun, subsequently admitted as evidence during the joint trial, upon the person of Thaddic. Five one-dollar bills were taken from McCastle's sock, and four one-dollar bills and $1.35 in change were recovered from Thaddic who admitted his participation in the robbery at the police station, and repeated this admission in the presence of McCastle who then admitted that he, too, had participated in the commission of the offense.

McCastle testified that he did not commit the robbery, that he had not known Thaddic prior to the date of their arrest, that police officers beat him upon the stomach and subjected him to a game of "Russian Roulette", after which he confessed. This claim of police brutality was corroborated by Thaddic. Both defendants testified that the claimed violence occurred in the presence of the taxi driver, but he and two police officers specifically denied the brutality charges.

At his arraignment on June 3 McCastle told the court that his mother had retained the services of an attorney for him, but did not name him. No private attorney ever ap-

peared and the court subsequently appointed the public defender to represent both McCastle and Thaddic, and their joint trial occurred on August 21, 1963. The defendant made no objection to being represented by the public defender, nor was there any suggestion by defendant or his counsel that the two defendants would present antagonistic defenses or that any other grounds for severance existed.

Neverthless, defendant now contends that the court should have appointed separate counsel for him on its own motion. He predicates this claim upon the proposition that Thaddic might have committed the robbery alone or with an unidentified third party, and that Thaddic should have been vigorously cross-examined by an attorney representing McCastle's interests alone. This contention, however, is completely unsupported by this record which contains no evidence of the theory now relied upon. McCastle's defense was his uncorroborated testimonial alibi and his statement that he had not even known Thaddic prior to their joint arrest. Both defendants denied knowing the other and their alibis were entirely separate. There was no inconsistency in these defenses, and it was not improper for the same public defender to contemporaneously represent both defendants. As a general rule, jointly indicted defendants should be jointly tried unless their defenses are antagonistic, and a severance is neither required nor authorized where their defenses are not inconsistent. (*People* v. *Wilson,* 29 Ill.2d 82; *People* v. *Brinn,* 32 Ill.2d 232, 245; *People* v. *Aldridge,* 19 Ill.2d 176; *People* v. *Grilec,* 2 Ill.2d 538, 542.) Additionally, there is no showing that defendant was prejudiced by counsel's representation of both him and his co-defendant, or that a different result might have obtained had separate counsel been appointed, and we ought not disturb a judgment on the basis of conjectural or speculative conflicts between the interests of co-defendants which are envisioned for the first time on appeal. (See *People* v. *Courtney,* 307 Ill. 441.) *Glasser* v. *United States,* 315 U.S. 60, 86 L. Ed.

680, 62 S. Ct. 457, heavily relied upon by defendant, is inapposite, for there the accused specifically requested the undivided assistance of counsel of his own choice, and the attorney appointed by the court to represent him pointed out inconsistencies in the defenses of the co-defendants and was reluctant to represent both of them.

Defendant further maintains that his confession should not have been admitted as evidence during the trial. Although no objection was made to its admission, the record indicates that the court considered the question of voluntariness, and the People introduced evidence to rebut the claims of physical violence made by defendants. The trial in this cause occurred on August 21, 1963, and hence *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, are not applicable. (*Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772.) Initial responsibility for determining voluntariness and admissibility rests with the trial judge who hears and sees the witnesses, and his decision will not be disturbed in the absence of manifest error. (*People* v. *Hartgraves,* 31 Ill.2d 375; *People* v. *DiGerlando,* 30 Ill.2d 544, 550.) It is further argued that Thaddic's confession should not have been admitted against McCastle. There was no objection made to its admission, thereby waiving any error with regard thereto (*People* v. *Cox,* 22 Ill.2d 534,) but in any event, McCastle admitted that Thaddic's confession was correct when the latter repeated it in the presence of the former, and we have previously held that an incriminating extrajudicial statement made by a co-defendant and admitted by defendant as true becomes the latter's by adoption and may be used against him. *People* v. *Hanson,* 31 Ill.2d 31, 38, and cases there cited.

Defendant asserts that the trial court determined his guilt before the evidence was all in and even before the closing of the People's case. After the State had offered into

evidence the money claimed taken from the taxicab driver and allegedly found in the possession of the defendants, counsel for the defense objected, whereupon the court stated that Thaddic and McCastle had divided the money between themselves. We believe that this statement was not made in reference to the question of defendant's guilt but rather in reference to whether the money should be allowed as evidence over counsel's objection, as the judge thereafter stated: "* * * If they had one-dollar bills, I think it is always evidence of something to show that they had some money on them where they were arrested, and that the money was in the same denominations as the money that was taken * * *."

It is also urged that the court relied in large part upon facts within the personal knowledge of the trial judge but which were not introduced as evidence. The judge did state that he was personally acquainted with one of the officers accused by defendant of having treated him brutally, and believed that the officer was a reliable man. However, this does not necessarily indicate that the court predicated either its ultimate judgment or its ruling on the admissibility of the confession on that acquaintanceship, and we will not presume the judge did so, particularly where the properly considered evidence more than adequately establishes defendant's guilt. The complainant, who had a good opportunity to observe his assailants, positively identified defendant as one of them, and the precise amount of money taken from the driver was found upon the persons of the two defendants. The complainant as well as two police officers specifically rebutted defendant's allegations of brutality. In our opinion the trial judge's acquaintanceship with the police officer is at most only one ill-advised reason out of many properly considered ones leading to the ultimate determination by the court on both the questions of admissibility of the confession and guilt.

Defendant finally maintains that a gun and bullets which

an officer testified were taken from his co-defendant at the time of their arrest should not have been admitted as evidence against him. There was sufficient testimony to establish that at least one weapon was used in the commission of the offense, there was substantial evidence that defendant participated in the crime, and there was testimony that the weapon admitted was similar to the one used during the robbery. Under these circumstances, reception of the weapon as evidence against defendant was proper, for, as we said in *People* v. *Ashley*, 18 Ill.2d 272, 280, *cert.* denied, 363 U.S. 815, 80 S. Ct. 1255, 4 L. Ed. 2d 1157, "* * * a weapon may be admitted in evidence where there is proof to connect it with the defendant and the crime. However, it is not necessary to establish that the particular weapon was the one which was actually used. Where the proper connection is established and it is shown that defendant possessed a weapon which could have been used in the commission of the crime, it may be admitted in evidence. (*People* v. *Mikka*, 7 Ill.2d 454; *People* v. *Dale*, 355 Ill. 330.) Likewise, where it appears that defendant participated in a crime, in which the weapon was used, it may be admitted though he himself did not wield or possess it. *People* v. *Maciejewski*, 294 Ill. 390; *People* v. *Sobzcak*, 286 Ill. 157." (See also *People* v. *Johnson*, Docket No. 38706, September, 1966.) That the record indicates some question as to whether the bullets admitted into evidence would fit into the gun received does not, in our judgment, require reversal and remandment, for this circumstance serves only to lessen the credibility of the officer who testified that they were taken from the gun, and is a factor for consideration by the trier of fact. In any event, where guilt is otherwise manifest, errors not likely to have affected the decision will be regarded as harmless.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*