THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ABRAHAM BARKER (Impleaded), Defendant-Appellant.

(No. 59922;

First District (5th Division)—April 11, 1975.

Paul Bradley and Howard B. Augustus, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr. and John F. Brennan, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was indicted with Sam Calhoune and Arthur Shepard for

the murder of Horace Kimbrough in violation of section 9—1 of the Criminal Code. (Ill. Rev. Stat. 1969, ch. 38, par. 9—1.) Tried alone without a jury, defendant was found guilty and sentenced to a term of 20 to 40 years.

On appeal defendant contends that (1) he received inadequate legal representation at trial since his privately retained attorney had theretofore acted as counsel in the preliminary proceedings for the State's main witness; (2) if he is guilty of any offense, it is voluntary manslaughter; and (3) the sentence imposed is excessive.

Willie Hayes testified, as a witness for the State, that on February 15, 1972, he resided in a first-floor unit of an apartment building in Chicago; and he had known defendant, Calhoune, Shepard and Kimbrough for several years. Prior to 9 P.M. on that date he and Shepard were in front of the apartment building where they observed Kimbrough, Calhoune and defendant seated in a police car. After the latter three were released, the five of them engaged in general conversation in the hallway of the building for 30 to 45 minutes; the five men then entered his apartment; and no "words" had been exchanged during that conversation.

Upon entering the apartment, Kimbrough leaned against the kitchen sink, holding his hand inside his jacket and over his waist, as though "he had a gun or something." One of the other three men called Kimbrough a "police stool pigeon" and an argument ensued between defendant and Kimbrough; defendant grabbed Kimbrough's arms and they began to fight. Shepard hit Kimbrough with a chair, and defendant and Calhoune struck him with their fists. Hayes then asked the men to take the fight out of his apartment. Shepard, Calhoune and defendant carried Kimbrough out of the apartment by his legs and arms, and down the hallway toward the rear of the building. Two women, Alberta and Martha Jean, were in the hallway at the time the men exited the apartment. Hayes returned to his apartment where he remained about 5 minutes.

He then proceeded to the rear of the building, which was lighted by a porch light, where he observed Kimbrough on the ground while the other three men struck him with bricks; Kimbrough crawled around the back of the building for 15 to 20 minutes, there "wasn't nothing he [Kimbrough] could do"; Hayes heard Kimbrough remark that he would not forget defendant and Calhoune, and they continued to beat him. Calhoune then stabbed Kimbrough with a knife four times in the chest and stomach; defendant, standing "right down on" Kimbrough and facing Hayes, shot Kimbrough with a gun three times in the stomach and once in the head. He indicated the respective positions of those involved in the incident on a photograph of the rear of the building introduced into

evidence; Kimbrough was lying face up on the ground. The men then left.

Hayes further testified that he had observed no trouble between defendant, Kimbrough and Calhoune after they had alighted from the police car; that Kimbrough's reputation in the community was one of violence; that a few days before the homicide Kimbrough had been carrying a gun "for defendant"; and that he had had a portion of a quart of beer to drink prior to the time in question. The homicide took place about 10 P.M. and Kimbrough's body was removed from the scene about 8 the following morning.

Alberta Echols testified, as a witness for the State, that she had been playing cards with several other women in an apartment across the hall from the Hayes apartment; she heard a "commotion" across the hall, went to the door and observed Calhoune, Shepard and defendant, all of whom she had known in the past, carrying Kimbrough out of the Hayes apartment. The three men were beating and "stomping" him, and Calhoune was hitting him with a stick. She observed Hayes standing by his apartment door at that time. The women closed their apartment door, after which Calhoune and Shepard attempted to break it down. The door was opened about five minutes later, at which time she observed Kimbrough lying alone in the hallway; she heard him holler for help shortly thereafter and later heard four gunshots.

Michael Garrity, a Chicago police officer, testified, as a witness for the State, that he had received a call of a man shot at the address in question on February 15 [sic], 1972, and that when he arrived there at 7:55 A.M. he observed Kimbrough lying face down at the rear of the building; no weapon was found in the area, and the only person at the scene was a young boy.

Dr. Edward Shalgos, a pathologist, testified for the State that an examination of Kimbrough's body revealed a single gunshot wound to the head behind the ear, through which four pellets passed into the head; the body contained eight stab wounds and bore 19 marks administered by a blunt instrument, 14 of which were "very, very severe," and several teeth had been knocked out. He removed an 'old, oxidized" pellet from the chest and observed evidence of an old wound to the body, apparently caused by a shotgun. He testified that death was caused by the gunshots to the head but that the stab wounds could have caused death on a delayed basis. He found no powder burns in the area of the head wounds.

Defendant, 35 years of age, testified in his own behalf. Two or three weeks prior to the date of the homicide, Kimbrough fired shots at him; defendant signed a complaint against him as a result, but he was later told not to appear in court by two men whom he had seen exiting Kim-

brough's automobile. On the night of the homicide Kimbrough had accused him of informing on Kimbrough to the police. Later that night he was drinking liquor with Calhoune outside the apartment building in question when the police arrived and told them to enter the police vehicle. He put down the liquor bottle and also hid a .22 automatic pistol which he had been carrying. While they were in the police car Kimbrough walked by and was asked by the police to enter the vehicle; the police searched defendant before he entered the car, but they did not search Kimbrough. The three men thereafter exited the police vehicle, defendant and Calhoune proceeding to the Hayes apartment. Kimbrough later entered the apartment and positioned himself next to the door, holding his hand under his coat. He and Calhoune had been discussing their prior encounter with the police, whereupon Kimbrough called him a police stool pigeon; the latter two men argued and Hayes told them to take the argument outside the apartment. Kimbrough struck defendant and, as he took hold of Kimbrough, they fell out the door. He held onto Kimbrough's arm because he had felt a gun-like object, someone pulled Kimbrough from him, and they struggled toward the rear porch. They then fell to the ground outside the building; defendant rose to his feet and as Kimbrough, who was still lying on the ground, reached inside his pocket for what appeared to be a gun, defendant drew his gun and fired at Kimbrough; he then walked away and subsequently dropped his weapon in a sewer. At the time he shot Kimbrough, the latter was a little out of his reach. He did not know whether anyone else struck Kimbrough at the time since he was excited and was trying to keep him from reaching the metal object on his person; he did not know who stabbed or beat Kimbrough. Kimbrough had a reputation for violence, and defendant shot him in self-defense.

Defendant's sister testified at trial and identified a photograph of Kimbrough as resembling the person who had theretofore followed her and a companion while carrying a steel file.

OPINION

Defendant contends that his privately retained counsel (hereinafter "trial counsel") afforded him inadequate representation at trial since this same attorney had heretofore represented Hayes during a preliminary hearing, Hayes having initially been charged with defendant, Calhoune and Shepard in the murder of Kimbrough; and that such dual representation constituted a "flagrant conflict of interest" on trial counsel's part. No probable cause was found at that hearing as to Hayes, and Hayes was not indicted on the charge but subsequently testified for the State and against defendant in this case. Defendant argues that the position of Hayes at the preliminary hearing implicated him in the offense because

a statement given by Hayes to the police immediately following the homicide, to which trial counsel did not then object, disclosed that Hayes was interested solely in saying the "right thing" to vindicate his own part in the incident. Defendant further argues that in order to properly defend him at trial, counsel would be forced to cast Hayes, his former client, in a bad light on cross-examination by reason of certain matters brought out before the grand jury and at the preliminary hearing.

There is no merit to defendant's contention in this regard. The record discloses that he voluntarily chose trial counsel to represent him, with full knowledge on his part of counsel's prior representation of Hayes; that he was fully aware that Hayes' position prior to trial was antagonistic to his position; and that trial counsel afforded him vigorous representation in the trial of the matter.

During the preliminary hearing held 1 month after the date of the commission of the homicide and the date of the initial criminal charge against defendant, he was represented by a private attorney of his own choice. Said counsel indicated to the court during that hearing that defendant stated he was not receiving competent representation. Between the date of the preliminary hearing and the date of the trial, 4½ months later, three different attorneys filed their respective appearances for defendant apart from defendant's initial private counsel: the public defender of Cook County, a second private attorney and trial counsel here complained of.

Trial counsel represented defendant for 3½ months prior to the date of the trial and filed a number of documents on defendant's behalf. During direct examination of Hayes at the trial counsel raised numerous objections. His cross-examination of Hayes proceeded throughout 35 pages of the record. During the course of that cross-examination, when the court was reconvened after a recess had been called in the proceedings, the following colloquy occurred between the court, defendant and trial counsel:

> "THE COURT: Excuse me. Something occurred to me over the luncheon recess. I think we should straighten it out now for the record.
>
> It was called to my attention this morning, and we discussed this privately and I think it should be on the record in the presence of Barker, it was indicated that Mr. Edwards represented this witness, Mr. Hayes, at the preliminary hearing. Now, this I am sure Mr. Barker is aware of that.
>
> You are aware of that, Mr. Barker?
>
> THE DEFENDANT: Right.
>
> THE COURT: Furthermore, whereas Mr. Edwards did not represent Mr. Hayes any more, because his case is over, that there

are still certain funds due and owing Mr. Edwards—

MR. EDWARDS: $25.00.

THE COURT: $25.00. Whatever it is.

MR. EDWARDS: I will say thirty.

THE COURT: All right. This witness still owes Mr. Edwards some money on this case.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Do you understand that, Mr. Barker?

THE DEFENDANT: I understand.

THE COURT: Knowing that do you still wish to have Mr. Edwards represent you, is that correct?

THE DEFENDANT: Yes.

THE COURT: All right.

I thought about it over the noon. And as long as the defendant knows these things, in no way, I can't see any way you can be jeopardized in any way.

All right. You may proceed."

■■ It is clear from the foregoing and from the entire record that defendant was fully aware of trial counsel's prior representation of Hayes, and that he was fully aware that Hayes' position was consistently antagonistic to his own position. He nevertheless chose the same counsel to represent him and reaffirmed that choice even after admonishment by the trial court. Defendant therefore waived his right to the assistance of counsel other than trial counsel and cannot now be heard to complain. See, e.g., *People v. Walsh*, 28 Ill.2d 405, 192 N.E.2d 843.

In the cases of *People v. Johnson*, 46 Ill.2d 266, 265 N.E.2d 869, and *People v. Ware*, 39 Ill.2d 66, 233 N.E.2d 421, cited by defendant in support of his position, the counsel complained of were court appointed at trial, both of whom were involved in clear conflicts of interest; defendants there had no independent choice of counsel, as did defendant in the instant case. Likewise, in *Glasser v. United States*, 315 U.S. 60, the supreme court noted that defendant objected to being represented by appointed counsel who also represented a codefendant with conflicting interests; defendant there did not "affirmatively waive" his right to other counsel, whereas here defendant freely chose trial counsel to represent him, knowing all the other circumstances of the matter. Defendant cannot be permitted voluntarily and knowingly to choose private counsel for his defense and thereafter challenge counsel's competency on grounds which had been clearly known to him when he exercised such choice.

Defendant next contends that he should have been found guilty of voluntary manslaughter, rather than murder, inasmuch as the evidence

discloses that he acted in self-defense, although he was unreasonable in his belief that the circumstances were such as to have warranted self-defensive measures. (See Ill. Rev. Stat. 1973, ch. 38, par. 9—2.) The foregoing summary of the evidence adduced by the State negates defendant's contention in this regard.

■■  While there is some evidence disclosing that Kimbrough appeared to have been armed at the outset of the confrontation with defendant, the evidence further disclosed that after the altercation moved from the Hayes apartment through the hallway of the apartment building and into the rear yard area, Kimbrough was on the ground and helpless, being beaten by defendant and his companions with bricks, and that defendant thereafter fired four bullets into his head. The fact that all four bullets found in Kimbrough's head entered through the same wound militates strongly against defendant's position that he shot in self-defense; that fact, taken in conjunction with the evidence that death resulted from the gunshots to the head, that no powder burns were found on the head, and that when killed Kimbrough was in a helpless position, could have led the trier of fact reasonably to conclude that defendant deliberately and purposefully aimed the weapon at Kimbrough's head and carefully fired four shots into him. There was ample evidence from which the trier of fact could have found defendant guilty of the offense of murder, after discharging its duty to weigh the credibility of the witnesses and to resolve the conflicts in the evidence. See *People v. Young*, 11 Ill.App. 3d 609, 297 N.E.2d 298; *People v. Adams*, 113 Ill.App.2d 205, 252 N.E.2d 35.

Defendant also contends that the sentence imposed is excessive in light of the fact that he allegedly shot Kimbrough, who was a man of violence, out of fear for his own life.

■■  Contrary to defendant's contention, the record discloses that when he shot Kimbrough, the latter was on the ground and in a helpless position. Further, the record discloses that defendant had a prior criminal record and was 35 years of age at the time of the homicide. The facts surrounding the homicide reveal a senseless and brutal killing of a man, whether he was of a violent nature or not, who was set upon by three men armed variously with a club, a knife, a gun and bricks, while the former was in a defenseless position. Defendant was a party to the killing of Kimbrough, and it clearly appears that the trial court did not abuse its discretion in imposing the term of 20 years to 40 years in the penitentiary.

The judgment is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.