THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MILTON BARREN, Defendant-Appellant.

(No. 74-205;

Third District—October 6, 1975.

James Geis, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee (F. Stewart Merdian, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Milton Barren appeals to this court from a conviction of burglary in the Kankakee County Circuit Court. He was sentenced to a term of 5 to 15 years in prison as a result of such conviction.

It appears from the record that defendant was indicted together with J. C. Teague for burglary and on January 15, 1974, J. C. Teague pleaded guilty to the offense as charged. Defendant, however, pleaded not guilty and waived a jury trial and consented to be tried at a bench trial. As a result of such trial he was found guilty as charged. He was sentenced to a term of 5 to 15 years, which term was to run concurrently with the sentence of 3 to 12 years previously entered against defendant in another case which was reviewed on appeal in this court. *People v. Barren* (1974), 23 Ill.App.3d 79, 318 N.E.2d 206.

On appeal in the cause now before us, defendant Barren claims that he was denied his right to effective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution. His sole reason for this assertion was that he was represented by an assistant public defender after the public defender withdrew from the case because of an asserted conflict of interest.

From the record it is noted that at the time J. C. Teague pleaded guilty, the public defender who was attorney for both defendants, moved to withdraw as counsel for defendant Barren. The following discussion then occurred:

"THE COURT: * * * Mr. Barren, your lawyer has presented a Motion to Withdraw from representing you because Mr. Teague has pled guilty who is your co-defendant. It would be impossible for him to continue to represent you both. Understand?

DEFENDANT BARREN: Yes.

THE COURT: What do you have to say about that?

DEFENDANT BARREN: I would appreciate another attorney.

THE COURT: You would like to have another attorney. You have a right to have another lawyer. You understand that another lawyer has to have time to prepare your defense—he just can't come in and start trial—understand that?

DEFENDANT BARREN: Yes.

THE COURT: That means the one hundred twenty day rule would be broken. That is the rule that says you have to be brought to trial within one hundred twenty days of the date you were incarcerated. You have been in a hundred and eighteen days, I think, so that if I appoint another lawyer for you and give him time to prepare your defense, your time would all start all over again. You understand that?

> DEFENDANT BARREN: Yes.
>
> THE COURT: You still want another lawyer?
>
> DEFENDANT: Yes, I need counsel.
>
> THE COURT: Okay. I will give it to you. Mary, contact Mr. Mark Burkhalter and ask him to come up here and tell him I have appointed him to represent this man in this case. To come up Wednesday morning when I will call this case up again.
>
> You know Mr. Burkhalter?
>
> DEFENDANT BARREN: No, I don't.
>
> THE COURT: You know any other lawyer?
>
> DEFENDANT BARREN: Yurgine.
>
> THE COURT: Mr. Yurgine is in the Public Defender's Office. Since he is withdrawing I don't think Mr. Yurgine could come in here and represent you because he is in the same office as Mr. Eaken—but, if you want Mr. Yurgine I will appoint him for you.
>
> DEFENDANT BARREN: I would rather have him.
>
> THE COURT: You would rather have Mr. Yurgine. That is your free choice now?
>
> DEFENDANT BARREN: I make it.
>
> THE COURT: All right. Forget about Mr. Burkhalter. Call Mr. Yurgine and tell him he is appointed and this matter comes up again on Wednesday morning."

It was also noted of record that Attorney Yurgine was a part-time assistant public defender and maintained a law office and practiced separately from the public defender Mr. Eakin. Mr. Yurgine was thus appointed to represent defendant and did so adequately throughout the trial. Defendant now argues on appeal that the conflict of interest which persuaded the public defender to withdraw as counsel was not resolved by the appointment of the assistant public defender to represent him, and further, that defendant did not waive the asserted conflict by accepting Attorney Yurgine as his counsel since the record does not reflect (and hence he could not know) exactly what the conflict was. The only conceivable conflict of interest shown by the record is the fact that the public defender had represented both defendants, and that one defendant, Teague, had pleaded guilty while the other defendant, Barren, decided to go to trial. The only adverse effect as to Barren from such asserted conflict of interest which could thus arise would necessarily be the result of a circumstance in which Teague might testify as against defendant Barren, and defense counsel might find it difficult to cross-examine him. This problem, however, did not arise since Teague was not called as a witness and did not testify in the case in any respect.

The issue which comes before us on the question of the sixth amend-

ment right to counsel is premised on the right to effective counsel which entitles a criminal defendant to the undivided loyalty of his attorney (*Glasser v. United States* (1942), 315 U.S. 60, 86 L.Ed. 680, 62 S.Ct. 457; *People v. Stovall* (1968), 40 Ill.2d 109, 111, 239 N.E.2d 441). This principle is respected by the courts in being watchful for situations where counsel may have a conflict of interest which might prevent such counsel from fully devoting his efforts to representation of his client.

An illustration of this situation could arise where a trial court would appoint the public defender as counsel for an indigent defendant in a post-conviction proceeding in which one of defendant's contentions is that the public defender's office was incompetent in its representation of defendant at trial. (*People v. Brittain* (1972), 52 Ill.2d 91, 284 N.E.2d 632; *People v. Sigafus* (1968), 39 Ill.2d 68, 233 N.E.2d 386; *People v. Bain* (1974), 24 Ill.App.3d 282, 320 N.E.2d 426.) This rule would, of course, apply where the two individual attorneys, one at the trial stage and the other at the post-conviction hearing, are both members of the public defender's office. (*People v. Smith* (1967), 37 Ill.2d 622, 230 N.E. 2d 169.) In the *Smith* and *Bain* cases the reasons for application of this rule are clearly shown, on the basis that it would be difficult for a representative of the public defender's office to argue zealously in a post-conviction proceeding that his office was incompetent during the pretrial and trial stages leading to defendant's conviction.

Another situation involving a conflict of interest exists where one attorney represents two or more codefendants whose defenses are antagonistic to each other, and in such case, they are entitled to separate counsel. (*People v. Johnson* (1970), 46 Ill.2d 266, 265 N.E.2d 869; *People v. Ware* (1968), 39 Ill.2d 66, 68, 233 N.E.2d 421.) It is noted, however, that where the defenses do not appear inconsistent and the alleged conflict is not supported by the evidence and is speculative in nature, there is no error in the failure to appoint separate counsel, at least where none was requested. (*People v. Somerville* (1969), 42 Ill.2d 1, 245 N.E.2d 461; *People v. McCasle* (1966), 35 Ill.2d 552, 221 N.E.2d 227.) It appears clearly from the record in the case before us that the conflict of interest alleged by the Public Defender Eakin stems solely from the fact that the codefendant Teague had determined to plead guilty to the burglary. There is no indication in the record that Teague's plea of guilty was in any manner antagonistic to Barren's plea of not guilty, or that there was any other specific reason for the Public Defender Eakin to withdraw as counsel for Barren.

The admission of guilt by one codefendant does not in and of itself show that his position is antagonistic to another codefendant. (*People v. Husar* (1974), 22 Ill.App.3d 758, 762, 318 N.E.2d 24.) Where there is

no showing that the interests of the codefendants are at odds, it is not error to fail to appoint separate attorneys. *People v. St. Pierre* (1975), 25 Ill.3d 644, 324 N.E.2d 226; *People v. Dickens* (1974), 19 Ill.App.3d 419, 423, 311 N.E.2d 705.

As we have indicated previously, Teague did not testify in the trial of Barren from which this appeal is taken, and, where a codefendant does not testify, the courts do not find error in the failure to appoint separate counsel. (*People v. Tucker* (1971), 3 Ill.App.3d 273, 278 N.E.2d 141; *People v. Dickens* (1974), 19 Ill.App.3d 419, 311 N.E.2d 705.) Even where a codefendant testifies against the defendant, it is not error if the codefendant has already been sentenced and there is nothing to gain, nor anything to protect. (*People v. Forbis* (1973), 12 Ill.App.3d 536, 298 N.E.2d 771.) In addition to the failure to show a conflict on the record by appellant, the fact that Teague did not testify against Barren makes clear that the trial court did not commit reversible error in appointing attorney Yurgine to represent Barren as Barren requested. We have alluded to the fact that the public defender of Kankakee County and the assistant public defender Yurgine were lawyers in different law firms in Kankakee and apparently are not full-time public defenders. It is significant in the record, as shown by the colloquy between Barren and the court, that Barren waived any possible conflict of interest problem which still existed after Public Defender Eakin had withdrawn and Yurgine was appointed to represent defendant. Defendant Barren specifically asked for defendant Yurgine despite the fact that he knew Teague had pleaded guilty and that Yurgine was an assistant public defender.

The defendant cites *People v. Stovall* (1968), 40 Ill.2d 109, 113-14, 239 N.E.2d 441, in support of his contention in this case. The *Stovall* case, however, involved a clear conflict of interest where defendant's counsel had represented both the corporate owner and the individual proprietor of the store which defendant had burglarized. Cases which are more pertinent to the issue before us and in which the court clearly concludes that there were valid waivers as to counsel involved, are *People v. Barker* (1975), 27 Ill.App.3d 1065, 1069-70, 327 N.E.2d 382, and *People v. Buckholz* (1974), 24 Ill.App.3d 324, 329, 320 N.E.2d 421.

Defendant has not even intimated that the defense conducted by attorney Yurgine was anything less than a full and vigorous representation to which he was entitled. While we recognize the amount of prejudice is not always a factor in certain appropriate cases (*Glasser v. United States* (1942), 315 U.S. 60, 76), for the purpose of determination of the issue before us, it is significant in showing that there was, in fact, no conflict involved in the cause before us. Attorney Yurgine who was ap-

pointed was specifically requested to be such appointee for him by defendant Barren despite defendant's knowledge that his codefendant had pleaded guilty and that attorney Yurgine was an assistant public defender from the public defender's officer. The codefendant who had pleaded guilty did not testify at defendant's trial, and there was no showing that the codefendant's plea of guilty was antagonistic to defendant's position.

As we have indicated, it is clear that defendant waived any right to object to the appointment of Yurgine as his counsel. While we would agree that if the attorney who was appointed to represent defendant Barren was one to whom defendant objected and was appointed by the court over defendant's objection where there was some conflict of interest, that appointment would clearly be in error. In the cause before us, however, on the basis of the record, it is clear that there is no reversible error by virtue of the appointment of Yurgine and that defendant in fact was not denied effective assistance of counsel.

The judgment of the Circuit Court of Kankakee County is, therefore, affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.