THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDREW CRAIG *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 61616

Opinion filed March 15, 1977.

244

James J. Doherty, Public Defender, of Chicago (Leonard V. Solomon, Assistant Public Defender, of counsel), for appellants Andrew Craig and Cleofus Hopkins.

Ackerman, Durkin & Egan, of Chicago (Allan A. Ackerman, of counsel), for appellants Lee Taylor and Grady Lewis.

Gerald M. Werksman, of Chicago, for appellant George Brown.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Renee G. Goldfarb, and Randolph T. Kemmer, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

In a jury trial, defendants George Brown, Andrew Craig, Grady Lewis, and Lee Taylor were each found guilty on one charge of burglary and two charges of armed robbery. A fifth defendant, Cleofus Hopkins, was found guilty of burglary. Following hearings in aggravation and mitigation, defendant Brown was sentenced for a term of from eight to 16 years on each count of armed robbery, and one to five years for the burglary; defendant Craig was sentenced to 12 to 30 years on each of the armed robbery counts, to be served consecutively, and two to 10 years for the burglary, to be served concurrently with the second sentence for

armed robbery; defendant Hopkins was sentenced to serve one to three years for the burglary; and defendant Lewis received five- to 15-year sentences for each of the armed robberies, and one to five years for the burglary, to be served concurrently.

Defendants now appeal their convictions, presenting numerous issues: (1) whether defendants' representation at trial by their single, privately retained counsel violated their right to effective assistance of counsel; (2) whether the admission into evidence of certain photographs of a police lineup was proper; (3) whether the evidence was sufficient to convict defendant Brown of armed robbery; (4) whether the sentences imposed on defendants Craig and Brown were excessive; (5) whether the imposition of consecutive sentences on defendant Craig was proper; and (6) whether it was error for the trial court to refuse to call for examination a juror who, it was alleged after trial, may have known the defendants.

On May 15, 1973, Thomas Baldwin and T. J. Williams, employed by the W. L. Lillard Bureau of Investigation as armed security guards, were sent to guard a boarded-up liquor and drug store at 4068 S. Ellis Avenue in Chicago. There had been a fire in the store the previous day.

Baldwin and Williams arrived at the scene for their shift at approximately 5:45 p.m. At about 6 p.m., Williams made a routine check of the premises and observed defendant Taylor and another man climbing the back wall of the store in an attempt to enter the building. He told them to leave and they did. At about 6:15 p.m., Baldwin and Williams were approached by a group of men, including defendants Taylor, Craig, Brown, and Lewis. There was a brief conversation; the group left, only to return a few minutes later. This time one of the men told Baldwin and Williams to get in their car and leave. They refused, whereupon defendant Craig said they would get into the store one way or the other. The group left again, only to return once more. This time members of the group, including defendants Taylor, Craig, Brown, and Lewis, were armed with various weapons, including sawed-off shotguns and pistols.

Once again the security guards were ordered to get into their car and leave. When they again refused, they were disarmed and led to the basement of a building on East 41st Street. A few minutes later they were led out of the basement and into the backyard of a nearby abandoned building. At the trial Williams testified that defendant Taylor then put a gun to Baldwin's head and threatened to kill him. When Williams begged Taylor not to kill Baldwin, defendant Craig pointed a gun at Williams and threatened the same to him. Baldwin and Williams were then forced to lie face down on the ground. Their handcuffs were taken from them and placed on their wrists behind them. They were gagged and money was taken from their pockets. They were told not to move and that a member

of the group would stay and watch them. They were then abandoned in the yard and remained there for approximately two hours until they were found by a Chicago police officer.

Meanwhile, at approximately 9 p.m., three plainclothes Chicago police officers were driving an unmarked car eastbound on Ellis Avenue, approaching 4068 S. Ellis, when they observed defendant Hopkins leaving the boarded-up liquor and drug store carrying a box containing a number of cartons of Kool cigarettes. When the officers got out of their car, Hopkins dropped the box and began to run. He was quickly apprehended by one of the officers. Investigating further, the officers entered the store and found a number of men with various items of merchandise in their hands. Among those arrested inside the store were defendants Taylor, Craig, Brown, and Lewis.

Following their arrests, defendants were taken to the 21st District police station and placed in a lineup. All five defendants were identified by Baldwin, while Williams identified only Craig and Taylor.

At their trial all of the defendants were represented by a single privately retained attorney. Defendants Brown, Taylor, and Lewis admitted being in the store at the time of the arrest, but denied any participation in the armed robberies. Defendant Hopkins testified that he found the box with the cigarettes lying in the street, and merely picked it up. He, too, denied participation in the armed robberies. Four of the defendants, Brown, Lewis, Hopkins, and Taylor, presented alibi defenses for the period of time in which the armed robberies occurred. No defense was presented by or on behalf of defendant Craig, who absented himself from the courtroom during most of the trial.

## I.

The foremost issue is defendants' contention that their continued joint representation at the trial by their privately retained attorney was a conflict of interest and denied them their constitutional right to effective assistance of counsel. The alleged conflict arose after defendants' attorney became aware prior to trial that defendant Taylor had made an oral admission that he (Taylor) had been caught inside the store.

## A.

■■ As we said in *People v. Husar* (1st Dist. 1974), 22 Ill. App. 3d 758, 762, 318 N.E.2d 24, "[t]he right to counsel that is guaranteed by the Sixth Amendment to the Constitution of the United States does not include an automatic right to separate counsel in a case involving more than one defendant. (*People v. Chacon* (1968), 69 Cal. 2d 765, 773, 774, 447 P.2d 106, 73 Cal. Rptr. 10, 15.) One counsel in a case against multiple defendants can represent more than one, as long as the representation is

effective and it does not appear that conflicts of interest between or among defendants can be anticipated. (*Powell v. Alabama* (1932), 287 U.S. 45, 71, 77 L. Ed. 158, 53 S. Ct. 55; *People v. Robinson*, 42 Ill. 2d 371, 247 N.E.2d 898; see *People v. Williams*, 36 Ill. 2d 194, 222 N.E.2d 321.)"

■■ Effective assistance of counsel is assistance untrammelled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If counsel must represent conflicting interests, or is ineffective because of the burdens of representing more than one defendant, the injured defendant has been denied his constitutional right to effective counsel. The determination of the issue of whether representation of multiple defendants by a single counsel deprived a defendant of effective assistance of counsel because of conflicts of interest does not depend upon nice calculations of the court with respect thereto. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) Where there is no showing that a single attorney's representation of multiple defendants caused prejudice to an individual defendant, or that a different result might have obtained had separate counsel been appointed, a court of review will not disturb a judgment on the basis of conjectural or speculative conflicts of interest of codefendants raised for the first time on appeal. (*People v. McCasle* (1966), 35 Ill. 2d 552, 556, 221 N.E.2d 227; *People v. Bass* (1st Dist. 1968), 101 Ill. App. 2d 259, 262, 243 N.E.2d 305.) Codefendants should have a right to separate counsel if their positions are antagonistic, but such antagonism is not necessarily present, merely by virtue of such representation, in every instance where the same attorney represents two or more codefendants. *People v. Durley* (1972), 53 Ill. 2d 156, 160, 290 N.E.2d 244.

■■ Our review of the record leads us to conclude that there is no real conflict of interest. Therefore, defendants were not denied effective assistance of counsel. (*People v. Normant* (1st Dist. 1975), 25 Ill. App. 3d 536, 540, 323 N.E.2d 553.) The trial record reveals that each of the defendants (except Craig) presented an alibi defense. The alibis were in no way conflicting, and, in fact, complimented and corroborated those of the others. Defendant Hopkins testified that his car broke down near the scene of the burglary, and that he worked on it for awhile before driving his girl friend to visit a friend nearby. He further testified that while working on the car, defendant Brown walked by, and that they had a brief conversation. After he drove his girl friend to her friend's house, he noticed people carrying merchandise out of the burned out store at 4068 S. Ellis. He walked back toward the store, noticed a box in the street, and picked it up. He was arrested by the police shortly thereafter. Defendant Brown testified that he spent most of the day watching television with his cousin, Tony Gardner. Shortly before 9 p.m., he left Gardner's home and drove to the vicinity of 4068 S. Ellis. He saw Hopkins working on the car

and spoke with him briefly. Seeing a commotion in the burned out store, he walked over to it, stepped inside, and was arrested by the police moments later. Defendants Lewis and Taylor testified that they were in a nearby playground drinking wine at the time of the armed robberies. Shortly before 9 p.m., they left the playground together and seeing the commotion at 4068 S. Ellis, walked that way. They also claimed to have stepped into the store only moments before the police arrived.

In the case at bar, the alibis of the various defendants were independent and corroborative of the others'. None of the alibis inculpated another defendant in the commission of a crime. There is nothing in the record to indicate any conflict *per se* among the defenses of the parties. *People v. Somerville* (1969), 42 Ill. 2d 1, 8—11, 245 N.E.2d 461.

■■ Defendants' assertion that the fact of their attorney's awareness prior to trial of Taylor's oral admission constituted a conflict of interest fails to do so because the substance of that admission, that Taylor was caught inside the store, was admitted by Taylor in his testimony. Defendants contend that had they been represented by separate counsel, their defenses may have been different because of the alleged statement by Taylor. We note that the record does not reflect any efforts by defendants at trial to raise the issue of conflict of interest. We will not disturb a judgment on the basis of such conjectural or speculative. conflicts of interest of codefendants envisioned for the first time on appeal. (*People v. McCasle* (1966), 35 Ill. 2d 552, 556, 221 N.E.2d 227.) Nor was it a conflict of interest for defendant Taylor to testify that codefendant Lewis entered the store with him, because Lewis himself confirmed that fact in his testimony. *People v. St. Pierre* (1st Dist. 1975), 25 Ill. App. 3d 644, 651, 324 N.E.2d 226.

There having been no conflict of interest, *Glasser v. United States, People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, and *People v. Ware* (1968), 39 Ill. 2d 66, 233 N.E.2d 421, relied on by defendants, have no applicability. In *Glasser*, the conflict of interest was established prior to the appointment of Glasser's attorney to represent a codefendant. Glasser, an attorney himself, objected to the appointment, and his attorney stated on the record that admissions of the codefendant would be admitted into evidence which would tend to inculpate Glasser in the commission of a crime. In *Stoval*, the conflict of interest consisted of the fact that the defendant's attorney was a member of a law firm which also represented the victim of the crime with which the defendant was charged. In *Ware*, a single attorney represented the defendant and a codefendant who testified for the prosecution at Ware's trial.

In their briefs, defendants have cited, by way of illustration, a number of decisions of various Federal Courts of Appeals dealing with the question of conflict of interest: *United States v. Marshall* (9th Cir. 1973),

488 F.2d 1169; *United States v. Pinc* (5th Cir. 1971), 452 F.2d 507; *Craig v. United States* (6th Cir. 1954), 217 F.2d 355; and *United States v. Foster* (1st Cir. 1972), 469 F.2d 1. In all but *Foster*, the courts have held that a conflict of interest existed. However, it must be noted that the courts were not called upon to speculate as to the existence of a conflict of interest. The conflict was evident from a reading of the record of the case. In *Foster*, the court found no conflict of interest in the record and affirmed the conviction. There is nothing in these cases which is inconsistent with our conclusion here.

### B.

Defendants also suggest that this court adopt a new rule requiring a trial judge, in criminal cases involving multiple defendants, to make an on-the-record inquiry into potential conflicts of interest and to admonish defendants of the inherent dangers where a single attorney represents more than one defendant. Defendants' briefs extensively argue that the potential for conflicts of interest in cases of multiple representation of defendants by a single attorney is so great, that under the American Bar Association standards[1] relating to effective assistance of counsel, the trial court is required to inquire, on the record, into potential conflicts of interest. It is argued that the right to effective assistance of counsel is a fundamental right, and that under *Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, and *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709, the waiver of that right cannot be presumed from a silent record. While the substance of the ABA standards has been adopted in a number of decisions of the Federal Court of Appeals (*United States v. Foster* (1st Cir. 1972), 469 F.2d 1; *Ford v. United States* (D.C. Cir. 1967), 379 F.2d 123), a majority of the Federal circuits, including the Seventh Circuit, have rejected it (*United States v. Mandell* (7th Cir. 1975), 525 F.2d 671, 677, *cert. denied*, 423 U.S. 1049, 46 L. Ed. 2d 637, 96 S. Ct. 774; *United States v. Boudreaux* (5th Cir. 1974), 502 F.2d 557, 558). Defendants have also failed to cite, and our own research has not found, any authority that this is the current rule in Illinois.

The ABA standards were the subject of a comprehensive study by the Young Lawyers Section of the Chicago Bar Association (The American Bar Association Standards for the Administration of Criminal Justice: Illinois Compliance, Chicago Bar Ass'n 1974). With respect to the Standards Relating to the Defense Function, section 3.5(a) and (b) (conflict of interest), the commentary points to the responsibility of attorneys, when conflicts of interest arise, under the Illinois Code of Professional Responsibility (DR 5-105(C)). Likewise, the commentary

---

[1] ABA Standard (approved draft 1971): The Function of the Trial Judge, section 3.4(b), and Defense Counsel, section 3.5(a) and (b).

notes that when two or more codefendants are represented by the same attorney, a trial judge has a duty to be conscious of possible conflicts of interest, and to see that, if necessary, multiple defendants are represented by independent counsel. We agree with those comments.

We also agree with the reasoning of the Seventh Circuit in *United States v. Mandell,* where it was stated:

"[T]he primary responsibility for the ascertainment and avoidance of conflict situations must lie with the members of the bar. This is especially true in the common representation situation, for all courts have recognized that common representation, without a showing of conflicting interests, is not in itself a violation of the Sixth Amendment, and that there may be excellent reasons for preferring the use of a single attorney in a particular case. We think the Sixth Amendment rights of defendants are adequately safeguarded by imposing the duty of informing defendants of the potential dangers of multiple-client representation initially on the attorneys, as officers of the court, and by admonishing the trial judges to be watchful for indicia of conflict during the trial." 525 F.2d 671, 677.

■■ In our opinion, in cases involving multiple defendants represented by one privately retained attorney, it is not necessary—until some evidence of conflict or antagonism between one or more defendants appears—for the trial court to inquire into such representation and then to call to the attention of the defendants the potential danger of multiple client representation. We find nothing in the record of this case which suggests the trial court erred in failing to advise the defendants.

■■ Defendants also argue that they were denied effective assistance of counsel in that their trial attorney was actually incompetent in his conduct of their defense. After a thorough review of the record of this case, we conclude that there is no merit to these arguments.

## II.

Defendants contend that the trial court erred in allowing the introduction into evidence of two photographs of the lineup conducted on May 15, 1973. Baldwin's testimony related that the photographs were a true and accurate portrayal of the lineup he viewed on that night. He did not testify that he made an identification from a photo of a lineup. Thus, *People v. Hanson* (1st Dist. 1973), 10 Ill. App. 3d 593, 595, 295 N.E.2d 120, and *People v. Smith* (1st Dist. 1969), 105 Ill. App. 2d 8, 245 N.E.2d 23, cited by defendants Lewis and Taylor, are inapposite.

■■ ■ Defendant Brown contends that the introduction of the photographs after witnesses Baldwin and Williams had placed "X's" over the heads of the persons they had identified constitutes plain error which

was highly prejudicial to him. He also argues that as he did not dispute the fact of his identification by the witnesses at the lineup, nor suggest that the lineup procedures were so suggestive as to taint an in-court identification, the photographs possessed no probative value. We do not agree. The admission of photographs to establish facts in issue in a criminal case rests within the sound discretion of the trial court, and this discretion will not be interfered with unless it is shown that it has been abused and that the defendant was thereby prejudiced. (*People v. Smith* (1st Dist. 1974), 20 Ill. App. 3d 756, 760, 314 N.E.2d 543.) The testimony of Baldwin relating to the lineup identification is relevant to establish the credibility of his identification of the defendants. The credibility of those identifications was placed in issue by the defendants, whose defenses as to the armed robbery charges were mistaken identification. Baldwin's ability to identify the defendants only hours after the occurrence was highly relevant to establish the validity of his identification in court. In addition, defendant Brown has failed to establish that he was in any way prejudiced by the introduction into evidence of the photographs. A photograph of a lineup does not suggest that its participants have been involved in prior criminal activity, as do so-called "mug-shots." *Cf. People v. Killebrew* (1973), 55 Ill. 2d 337, 303 N.E.2d 377; *People v. Murdock* (1968), 39 Ill. 2d 553, 237 N.E.2d 442; *People v. Ogden* (3rd Dist. 1966), 77 Ill. App. 2d 312, 222 N.E.2d 329.

### III.

■■ Defendant Brown contends that the evidence adduced at trial was insufficient to convict him of armed robbery. Our review of the record indicates that the evidence is sufficient to support the jury's verdict and that the contention is without merit.

### IV.

Defendants Craig and Brown contend that the sentences imposed on them were excessive. Craig was sentenced to a term of from 12 to 30 years for each act of armed robbery, to be served consecutively and two to 10 years for the burglary, to be served concurrently with the last sentence for armed robbery. Brown was sentenced to a term of eight to 16 years for each act of armed robbery and one to five years for the burglary, to be served concurrently. They also claim their sentences were excessive when compared to those of their codefendants (see the first page of this opinion for the sentences imposed).

The Unified Code of Corrections (UCC) (Ill. Rev. Stat. 1975, ch. 38, par. 1001—1—1 *et seq.*) was enacted in 1973 to provide for criminal

sanctions proportionate to the seriousness of the offense, to recognize that the possibilities of rehabilitation are different among offenders, to provide fair treatment to prison inmates consistent with security for other inmates, prison staffs, and the public, and to recognize that offenders must be restored to useful citizenship.[2] Section 5—6—1 requires that where, having regard to the nature and circumstances of the offense, and the history, character, and condition of the offender, a court is of the opinion that a defendant's imprisonment is necessary to protect the public, that the possibilities of rehabilitation are most effectively enhanced by a prison sentence, or that the penalties of probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice, the trial court "shall" impose a sentence of imprisonment on an offender.

The sentence for armed robbery (a Class 1 felony for which a defendant may not be sentenced to death, Ill. Rev. Stat. 1975, ch. 38, par. 18—2) is a minimum of four years and a maximum of any term in excess of four years (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1). A trial court is authorized to set a higher minimum sentence where, in its discretion, the nature and circumstances of the offense and the history and character of the defendant so requires (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2)). The sentence for burglary, a Class 2 felony (Ill. Rev. Stat. 1973, ch. 38, par. 19—1), is a minimum of one year unless, as in the case of armed robbery, the court feels a higher minimum is warranted (but not more than one third of the maximum sentence set by the court, section 5—8—1(c)(3)) and a maximum of any term in excess of 20 years (UCC, section 5—8—1(b)(3)).

The UCC allows a trial judge broad discretion in determining the sentence to be imposed in a given case. We are sensitive to the perennial debate over the breadth of judicial discretion in sentencing and the length of sentences. See The American Bar Association Standards for the Administration of Criminal Justice: Illinois Compliance, Chicago Bar Ass'n 1974, Standards Relating to Sentencing Alternatives and Procedures (Standard 2.5(B) and commentary) and Standards Relating to Appellate Review of Sentences (Standards 1.1, 1.2 and commentary); K. A. Menninger, *Senselessness of Sentencing,* 14 Washburn L.J. 241 (1975), and P.D. McAnany *et al., Illinois reconsiders "flat time": an analysis of the impact of the justice model,* 52 Chi.-Kent L. Rev. 621 (1976).

The possibility of rehabilitation was formerly considered an important element, but today, amongst some authorities, that concept has decreased in importance. In Illinois, where the legislature has provided for indeterminate sentences, there is a continuing dispute as to the disparity of sentences between individuals convicted for the same offense.

---

[2] See Ill. Const. 1970, art. I, §11.

But not every convicted person's record is the same, nor is everyone's participation in a crime the same, nor do the circumstances surrounding a crime always match. The law in Illinois is clear that where the sentence imposed is based upon a consideration of proper factors, such as the nature of the offense and the offender, the possibilities for the rehabilitation of the offender, and the interests of society and the victim in protection from the offender, a reviewing court should not reduce a sentence without substantial reason. (*People v. Marose* (1957), 10 Ill. 2d 340, 343, 139 N.E.2d 735 (as cited in *People v. Morgan* (1974), 59 Ill. 2d 276, 282, 319 N.E.2d 764).) The persuasive reason is that the trial court has a superior opportunity to observe such factors during the course of the trial and the hearing in aggravation and mitigation than does a court of review reading a cold record. *People v. Morgan,* 59 Ill. 2d at 282.

■■ Based upon our reading of the record, and upon the arguments of counsel, we conclude that the sentences imposed upon defendants Brown and Craig were not excessive. The crimes for which they were convicted were violent: two armed security guards were disarmed, prevented from performing their jobs, held captive and threatened with death by a heavily armed gang which included these defendants. In addition, the gang, including these defendants, broke into and entered a store with the intent to steal. During the trial, defendant Craig demonstrated his contempt for the law by absenting himself from the courtroom. At the time of sentencing, the trial judge had before him a presentence report which showed that defendant Brown had previously been convicted of the offense of escape (Ill. Rev. Stat. 1973, ch. 38, par. 31—6) and was then on three years' probation. The record also reveals that defendant Craig had a previous conviction for theft.

## V.

The State contends that, as the armed robberies of Baldwin and Williams were part of a single course of conduct, the imposition of consecutive sentences on Craig was improper. We do not agree. The UCC, section 5—8—4(a), provides, in relevant part:

> "When multiple sentences of imprisonment are imposed on a defendant at the same time, * * * the sentences shall run concurrently or consecutively as determined by the court. The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. Sentences shall run concurrently unless otherwise specified by the court."

A trial court may thus impose consecutive prison sentences upon a defendant where, having regard to the nature and circumstances of the

offense and the history and character of the defendant, it is of the opinion that such is necessary to protect the public from further criminal conduct by the defendant and where the offenses were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. Where consecutive sentences are imposed, neither the aggregate maximum nor the aggregate minimum of such sentences may exceed the highest maximum or minimum terms, respectively, authorized for the two most serious felonies involved. (Section 5—8—4(a), (b), and (c) (as amended, effective July 1, 1974).) Prior to July 1, 1974, however, the minimum and maximum aggregate of consecutive sentences could not exceed twice the minimum or maximum for the most serious felony involved.

While we have concluded that the sentences imposed on defendants Brown and Craig were not excessive, we believe that the consecutive sentences of 12 to 30 years imposed on defendant Craig should be modified to be served concurrently. On July 1, 1974, an amendment to section 5—8—4(c) became effective which would permit the type of sentence imposed here. The amendment provides that the aggregate minimum of consecutive sentences shall not exceed the highest minimum sentence authorized by the UCC for the two most serious felonies involved. The two most serious felonies involved here are two armed robberies. Under section 5—8—1, armed robbery carries a minimum sentence of four years. Where, however, the court feels a higher minimum sentence is appropriate, a higher minimum may be imposed. Given the nature of the crime and the defendant in this case, the trial judge was within his discretion in setting the minimum sentence for Craig at 12 years. However, the prosecution against Craig was commenced prior to the July 1, 1974 effective date of the amendment. Prior to July 1, 1974, section 5—8—4(c) provided that the aggregate minimum of consecutive sentences could not exceed twice the lowest minimum term *authorized* by the UCC for the most serious felony involved. In the case of armed robbery, the aggregate of minimum consecutive sentences could thus not exceed eight years, twice the lowest minimum term of four years authorized for a Class 1 felony under section 5—8—1. Although section 5—8—4(h) provided that section 5—8—4(c) applied to persons sentenced on or after the effective date, that section was held unconstitutional in *People v. Nicks* (1976), 62 Ill. 2d 350, 342 N.E.2d 360. In other cases similar to the instant case, the courts have held that where amendments to the UCC have become effective during the course of a defendant's prosecution, the defendant is entitled to sentencing in accordance with the act most favorable to him. *People v. Morgan* (1974), 59 Ill. 2d 276, 319 N.E.2d 764; *People v. Williams* (1975), 60 Ill. 2d 1, 16-17, 322 N.E.2d 819; *People v. Henderson* (1st Dist. 1976), 36 Ill. App. 3d 355, 387, 344 N.E.2d

239; *People v. Carpenter* (5th Dist. 1976), 38 Ill. App. 3d 435, 445-46, 347 N.E.2d 781.

■■ Here the indictment was returned by the grand jury on August 8, 1973, while sentences were imposed on November 20, 1974. Thus the July 1, 1974, amendment became effective during the course of the prosecution. As the pre-amendment statute was most favorable to Craig, the minimum sentence imposed exceeded that permitted under the pre-amendment statute. Accordingly, the sentences of defendant Craig are modified to concurrent in lieu of consecutive. *People v. Morgan,* 59 Ill. 2d 276, 283; *People v. Henderson,* 36 Ill. App. 3d 355, 388.

An additional point requires clarification. In its argument, the State has "conceded" that the consecutive sentences imposed on defendant Craig were improper because the crimes for which he was convicted arose out of a "single course of conduct during which there was no substantial change in the nature of the criminal objective * * *." (Section 5—8—4(a).) We do not agree. The armed robberies of Baldwin and Williams were two separate and distinct acts for which the imposition of consecutive sentences would ordinarily be proper. In *People v. Williams* (1975), 60 Ill. 2d 1, 14, 322 N.E.2d 819, our supreme court cited *People v. Johnson* (1970), 44 Ill. 2d 463, 256 N.E.2d 343, for the proposition that section 5—8—4 was not intended to apply to situations in which more than one offense arises from a series of closely related acts where the crimes are clearly distinct and require different elements of proof. (See also *People v. Perry* (1st Dist. 1976), 38 Ill. App. 3d 81, 86-87, 347 N.E.2d 340.) In cases in which crimes have been committed against two or more victims, Illinois courts have found the imposition of multiple sentences (or multiple *consecutive* sentences) proper. See *People v. Tucker* (1st Dist. 1973), 15 Ill. App. 3d 1003, 305 N.E:2d 676; *People v. Davis* (1st Dist. 1974), 20 Ill. App. 3d 948, 314 N.E.2d 723; *People v. Bell* (3rd Dist. 1975), 30 Ill. App. 3d 449, 332 N.E.2d 619.

■■ The armed robberies of Baldwin and Williams were proximate in time, space, and intent. Nevertheless, each was a separate and distinct offense which required different elements of proof. Section 18—2 defines armed robbery as robbery with a dangerous weapon. Section 18—1 defines robbery as the taking of property from a person or presence of another by the use of force or by threatening the imminent use of force. The word "another" is used in the statute in the singular form. If it were possible to commit a single act of armed robbery against a number of victims, the statute would have to read "another or others." Thus, the act of armed robbery committed by Craig against Baldwin is separate from that committed against Williams. Section 5—8—4(a) was not intended to protect a defendant from prosecution and conviction for multiple crimes against more than one victim proximate in time and space. For these

reasons, it was within the discretion of the trial court to impose consecutive sentences on Craig, but, as explained above, it was improper in this case.

## VI.

Defendant Brown contends that the trial court erred when it refused to call for examination, a juror who, it was alleged after trial, may have had personal bias against the defendants.

Following the trial in this case, the defense attorney filed a motion in the trial court in which he requested the examination of one of the members of the jury. The motion was accompanied by the attorney's affidavit which stated that within an hour of the jury's verdict, he, accompanied by a bailiff of the court, approached two of the jurors and asked to speak with them. During the conversation, one of the jurors is reported to have made the statement: "I wish you didn't leave me on the jury. I could not give them a fair trial as I knew them boys." The affidavit further stated that when impanelling the jury on the voir dire examination, the trial court asked this juror if she knew the defendants and if there was any reason that she could not render an impartial verdict. The affidavit stated that she had answered "No" to both questions.

At a hearing on the motion, the trial court heard oral testimony from the attorney and from the bailiff. The latter testified that the juror's statement had been: "I know them type of boys." Upon denial of the motion, defense counsel inquired of the trial court as to whether he might again speak to the juror and obtain her affidavit. The trial judge stated that he was free to do so, if the juror was willing to give her affidavit. Our examination of the record indicates that no affidavit of the juror was ever filed.

■■ The decision whether or not to call a juror for examination was one which rested within the sound discretion of the trial judge. In our opinion there was no abuse of discretion in the trial judge's ruling on the defense motion. In *People v. Ortiz* (1926), 320 Ill. 205, 150 N.E. 708, a witness reported to defense counsel after trial that he had heard one of the jurors state prior to trial that he had a strong bias against the defendant. In argument on Ortiz's motion for a new trial, defense counsel stated that although the witness was unwilling to swear to an affidavit, he was present in the courtroom and was willing to testify. The trial court held that it would accept affidavits, but would not hear oral testimony. The Illinois Supreme Court, stating that the question of the juror's alleged bias was of the utmost importance to the defendant, held that it was error for the trial court to refuse to hear the oral testimony. The case was reversed and remanded for a hearing on the issue.

In the case at bar, if it is true that the juror stated that she knew the

defendants, as defense counsel contended, then she must have known them prior to trial and, as was the case in *Ortiz*, failed to disclose that fact on the voir dire. Thus, the importance of determining the meaning of the statement is no less important to the defendants here than it was to Ortiz, for as the court stated in *Ortiz*:

"It would defeat the purpose of the constitutional provision which affords every person accused of a crime a trial by an impartial jury, to hold * * * [that defendant] had waived the right to challenge the juror by failing to do so upon the trial." (320 Ill. 205, 213.)

However, the court held that the procedure to be used in hearing the issue is within the discretion of the trial judge:

"On the hearing of the motion for a new trial the circuit judge stated that he would permit the filing of affidavits, but he refused to hear oral testimony. While it is not usual to examine witnesses in court upon a motion for a new trial, yet the practice is permissible. The *method of procedure rests largely within the discretion of the trial court.*" (Emphasis added.) 320 Ill. 205, 213.

In the case at bar, defense counsel failed to file an affidavit from the juror in support of his motion. Nor was an affidavit filed subsequently, despite a colloquy between the trial court and defense counsel concerning such an affidavit. In the absence of an affidavit, the trial court as the trier of fact ruled on the evidence before it. Based on the record we cannot say that there was an abuse of discretion.

For these reasons the judgment of the circuit court of Cook County is affirmed and the sentences of defendant Andrew Craig are modified to be concurrent rather than consecutive.

Affirmed and sentences of defendant Craig modified.

STAMOS and PERLIN, JJ., concur.