People of the State of Illinois, Plaintiff-Appellee, v. Forthune Humphrey and James Grashen, Defendants-Appellants.

Gen. No. 68–177.

Second District.

October 2, 1970.

John T. Beynon and Alvin Liebling, of Rockford, for appellants.

Philip G. Reinhard, State's Attorney of Winnebago County, of Rockford, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The defendants, Forthune Humphrey and James Grashen, were tried in the Circuit Court of Winnebago County for the offense of armed robbery which occurred on November 15, 1967, in the City of Rockford. They were tried jointly and filed certain pretrial motions—for severance, change of venue, to suppress evidence illegally seized, and to suppress an alleged confession by defendant Grashen, all of which were denied. However, before trial, the defendants and the court were advised by the State's Attorney that the confession would not be offered into evidence and it was not. A jury found them guilty as charged in the indictment and each was sentenced to a term of not less than 5 nor more than 15 years in the Illinois State Penitentiary, whereupon the defendants filed motions for a new trial, which were also denied.

Defendants appeal from the guilty verdict and from the judgment and order of the court on July 27, 1968. They contend (1) the guilty verdict of the jury and the judgment and order of the court are not supported by the evidence beyond a reasonable doubt and to a moral certainty; (2) it was reversible error against defendant Humphrey not to sever the trials of the defendants inasmuch as their defenses were antagonistic to one another, contrary to federal constitutional guarantees and provi-

407

sions of the law; (3) it was reversible error not to heed the direct prohibition against admitting into evidence pretrial hearsay statements of certain witnesses; and (4) it was reversible error to admit into evidence the prosecution exhibits which were the fruits of illegal searches and seizures.

Because of defendants' allegations, it is necessary to detail the evidence. Forthune Humphrey and James Grashen, of Milwaukee, Wisconsin, drove Grashen's mother's automobile from Detroit to Rockford accompanied by two girls, Tonie Thomas and Patricia Brad. The automobile was described as a 1959 dirty white Pontiac bearing Wisconsin license plates, with a loud muffler, primer spots and four bars on the rear fender. They shopped that evening and Humphrey rented a room at the Faust Hotel under an assumed name, which he used because of his civil rights activities. The night desk clerk testified that the time was about 11 p. m. on November 14, 1967. The defendants testified they went to a friend's home, Hollis Callier, who told them that the Noble Grocery Store was open where they could purchase food and soft drinks. They went to the store, the girls going in first for cokes, and the two men entering shortly thereafter to buy soda crackers. They returned to Hollis' home where they drank whiskey they had with them, ate and talked until after midnight. They arrived at the Faust Hotel again about 1:30 a. m. on November 15 and the night desk clerk checked them into a second room at that time. Grashen also used an alias when he rented the room. At 4:00 a. m. that morning they were arrested by several members of the Rockford Police Department.

Betty Kelly, the clerk in Noble's grocery, testified that she was robbed by the two defendants about 1:30 a. m. on November 15, 1967. The taller man, Humphrey, held a gun while Grashen took a stack of $1 bills, some fives and one or two tens from the cash register. She

stated that at the time of the robbery Humphrey was wearing blue glasses, a hat, a scarf and a light colored, regular length trench coat with a torn lining. She said he looked the same in court as at the time of the robbery except that his beard was longer. She also stated that Grashen, who was the shorter of the two, looked the same in court as at the time of the robbery except that his hair was different and he appeared thinner. She said he resembled another person of her acquaintance.

While the robbery was in progress a customer, Don Ingram, entered the store. At the trial, Ingram testified that he was the only customer in the store when the defendants entered and that Humphrey had the gun and Grashen took the money from the register. He made a positive in-court identification of the two defendants.

A John Sanders notified the Winnebago County Sheriff's Office of two suspicious looking individuals being in Noble's store prior to the robbery and described the individuals as one being about 21 years of age, 6 feet tall, wearing a full length tan coat, black hat and blue granny glasses, and the other as about 19 years of age, 5 feet 5 inches tall, wearing a brown jacket with a pompadour hair style. Sanders was not subpoenaed to testify because he was serving in the army in Missouri at the time of the trial.

Another witness, Mrs. Kreger, testified that she notified the police of a suspicious looking vehicle which she described as a dirty white or beige car with double fins and four silver bars on the back fender parked across the street from her home between 1 and 2 a. m. on November 15. Her home is located about 2 blocks north and a quarter block east of Noble's Grocery Store. The automobile first parked headed east with the motor running and then left. Five or ten minutes later, the car returned and parked headed west. Two men got out, one wearing a fingertip length coat and the other wore a shorter jacket. They walked in the direction of Noble's

store. About ten to fifteen minutes later she heard a piercing whistle and the car left.

One of the Rockford police officers testified that while responding to the call concerning the robbery of Noble's store they saw a white 1959 Pontiac automobile with Wisconsin license plates No. U 44 458, a loud muffler, and bars on the side of the fender. He stated that the automobile was occupied by two Negro males and two Negro females. Upon identifying the automobile when he saw it parked in the Faust Hotel parking lot about 4 a. m. on November 15, he and three other officers entered the hotel and talked with the desk clerk, a Mr. Phelan, who told them two Negro couples were occupying rooms on the 6th floor. The police officers proceeded to Room 623 where they found Grashen and one of the girls. They took a .32 automatic from Grashen and found $109 in $1 and $5 bills, a .22 pistol, and the keys to the automobile. Other officers went to Humphrey's room and found him with the other girl. Humphrey reached for a .38 revolver which was under his mattress. Humphrey's wallet containing $56 in $1 and $5 bills and $31 in $1 bills was found under a mattress. Ammunition for the weapons was also found in the rooms and walkie talkie equipment. When the automobile was searched at the police station the next morning, a receipt for $.39 dated November 14 from Noble's store was found.

Phelan identified the registration cards signed by the defendants and the time stamps which indicated that Marvin Brown (Humphrey) had checked in at the hotel at 11:37 p. m. on November 14 and Thomas Moore (Grashen) had checked in at 1:56 a. m. on November 15, 1967. A police officer stated that when they approached Phelan and asked him about the two Negro couples who had checked in and received a description that matched the description given by Betty Kelly, he said that they had last checked in about 1:50 a. m. on November 15,

although Phelan's own testimony was that they checked in about 1:30 or 1:40 a. m.

Tonie Thomas and Patricia Brad, the friends of the defendants, were called by the State and made court's witnesses upon motion. Thomas recalled being at the Faust Hotel about 1:40 and denied the contents of a statement made by her to the police and stated that she signed the statement because she was afraid of policemen. Patricia Brad denied the contents of a statement given by her, but admitted signing it. The police officers who took the statements testified that they advised both Thomas and Brad of their constitutional rights and that they made no threats or promises. Brad's statement was that defendants had planned to rob a store; they looked at different stores and then decided on Noble's and that they then robbed it. Thomas' statement was that the two defendants were to enter the store while they, the girls, were to wait a few blocks away.

██ In claiming that they were not proven guilty beyond a reasonable doubt, the defendants stated that the presumption of innocence is not overcome by the two unreliable and conflicting identifying witnesses, and that the total testimony is incomplete, biased and doubtful. It is stated that the testimony of the State indicates there were five persons who could identify the defendants; that identification of the defendants was a key to this action, and that the testimony of the identifying witnesses was incomplete because of the absence of certain of such witnesses. It is stated that a presumption must arise because three of these five witnesses did not testify; that if they did testify, their testimony would be detrimental to the State. It is clear that only Ingram and Betty Kelly were in the store at the time of the robbery, and that the other three witnesses were not present at the time of the robbery but were present in the store prior to the robbery. The absence at the trial of one of them

411

was explained but the absence of the other two was not. In any event, they were not eyewitnesses to the robbery. It has been said that the testimony of a single witness, if positive and credible, is sufficient to convict even though contradicted by the accused. The People v. Guido, 25 Ill2d 204, 209, 184 NE2d 858. Here there were two witnesses, Betty Kelly and Ingram, who positively identified the defendants as being the robbers. They were unshaken in their in-court identifications of the defendants and both testified that they each had a good opportunity to view the defendants. Their testimony is corroborated by the testimony of other witnesses, the circumstances of the arrest later, and the physical evidence obtained from the defendants. The defendants' auto was placed near the scene of the robbery and was noticed being driven in the area by police officers shortly after the robbery. Defendants themselves admitted having been at the Noble store that evening and having been on the street where the police observed their vehicle. Also to be considered are the circumstantial evidence and the physical evidence such as the weapons and currency which was found in the possession of the defendants after their arrest.

The defendants, aside from claiming that their identification as the robbers was vague and doubtful, served notice of an intent to prove an alibi during the trial and claimed that they did prove an alibi, which placed them at the Faust Hotel rather than the Noble grocery, some two miles away, at the time of the alleged offense. It appears that the offense happened about 1:30 a. m. and the defendants argue that Mr. Phelan's testimony supports their alibi. The jury heard Mr. Phelan's testimony and apparently determined that his testimony supported the State, rather than the defendants.

Considering all of the testimony, it appears that the testimony of the defendants and Callier is contradictory to much of the State's testimony and the physical

evidence introduced, and therefore, it was up to the jury to determine the credibility of all of the witnesses. We believe that the jury was warranted in returning a verdict of guilty and that the verdict is reasonable and justified. The evidence established the defendants' identities and the fact that they committed the armed robbery as charged beyond a reasonable doubt.

■ A court of review will not disturb a finding of guilty unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendants' guilt. The People v. Crews, 38 Ill2d 331, 335, 231 NE2d 451; The People v. Washington, 27 Ill2d 104, 110, 187 NE2d 739.

■ Next, it is contended that the failure of the court to sever the trials of the defendants was reversible error inasmuch as their defenses were antagonistic to one another, and, in particular, that the constitutional guarantees of the defendant Humphrey were violated. It is stated that the antagonism developed by the State placing in evidence a record of a felony conviction against Grashen. This, it is said, resulted in the impeachment of Grashen, akin to that of a confessed defendant, and therefore tended to impeach and be contrary to Humphrey's testimony. It is further contended that the introduction of Grashen's record compelled Humphrey to testify and thereby he lost his right of control over his defense and over his right not to be compelled to give testimony and to remain silent. This is a novel defense and no case has been cited directly in point, although there are cases dealing with the prejudicial effect of impeachment of a defendant by the introduction of a prior conviction when that defendant takes the stand in his own defense. Burgett v. Texas, 389 US 109 (1967) ; Luck v. United States, 348 F2d 763 (DC Cir 1965) ; Gordon v. United States, 383 F2d 936 (DC Cir 1967) ; Evans v. United States, 397 F2d 675 (DC Cir 1968) ; United States v. Palumbo, 401 F2d 270 (Second Cir 1968) ; United

States v. Hildreth, 387 F2d 328 (4th Cir 1967); United States v. Sternback, 402 F2d 353 (7th Cir 1968). (Also see Schaefer, The Suspect and Society, p 68 (NWU Press, 1967).) Generally speaking, the right to severance depends upon whether a severance is imperative to insure a fair trial. The People v. Wilson, 29 Ill2d 82, 91, 193 NE2d 449; The People v. Grilec, 2 Ill2d 538, 546, 119 NE2d 232. Here the defendants' alibis were the same and under the circumstances here present, we do not perceive how there was any antagonism one to the other so far as their defenses are concerned. Each defendant has the right to testify or not as he chooses but if he testifies, he is subject to impeachment like any other defendant. Brown v. United States, 356 US 148. We do not believe that because one defendant can be impeached, the other defendant has an unqualified right for a severance. If such a right of severance did exist, the State would be forced to try many, many different defendants to the same crime separately and the law thus far has placed no such burden upon the State. The mere possibility of impeachment of codefendants with compatible defenses does not, under the law, prevent them from being tried together. Although not directly in joint, the case of The People v. Kozlowski, 368 Ill 124, 126, 13 NE2d 174, decided that a defendant can be tried with other defendants who were charged with being habitual criminals.

■ Grashen contends that the introduction of the record of his prior felony conviction was reversible error as to himself. The introduction of a certified copy of a prior felony conviction for an infamous crime, in this case burglary, is a proper form of impeachment of a defendant and no error was committed in introducing the record into evidence. The People v. Bennett, 413 Ill 601, 605, 110 NE2d 175.

■■ It is also contended by defendants that the out of court pretrial statements made by Thomas and

414

Brad, girl friends of the defendants, were hearsay and therefore not admissible directly or indirectly into evidence against the defendants. The statements of Thomas and Brad have hereinbefore been recited. Before they took the stand to testify, the State's Attorney had requested that they be made court's witnesses and thereby subject to cross-examination and impeachment. The trial judge previously heard a motion to suppress evidence and knew that the girls were, if not eyewitnesses, at least material witnesses to the crime involved. From the record, the State's Attorney could not be certain as to what these witnesses would testify to prior to taking the stand. As a general rule, where the State's Attorney doubts the veracity or integrity of a witness and makes that known to the trial judge, he will not be required to call the party as a witness for the People and vouch for his testimony, but he may request the court to make such witness a court's witness. The People v. Robinson, 14 Ill 2d 325, 334, 153 NE2d 165. The judge's decision is discretionary and unless such discretion is abused, it is not a reversible error. People v. Stoudt, 90 Ill App2d 140, 145, 232 NE2d 800.

■■■■■■ We do not feel that the court abused its discretion here. Furthermore, the defendants made no objection to the State's motion to make Tonie Thomas a court's witness and, therefore, such objection is considered as waived and cannot be urged on appeal. The People v. Trefonas, 9 Ill2d 92, 98, 136 NE2d 817. An objection was made to calling Patricia Brad as a court's witness, but nevertheless, we feel that the court did not abuse its discretion. Both girls' testimony was contradictory to their prior statements, thus substantiating the reasonableness of the State's Attorney's request. The jury was advised, and the court properly instructed the jury, that the prior statements were offered and admitted into evidence only for the purpose of impeachment and were not to be given any substantive or independent

testimonial value. Were we to hold that the court abused its discretion in allowing these witnesses to be called as court's witnesses, impeachment may have been prevented and the jury would not be able to weigh the credibility of these witnesses. Such a result would not accomplish the ends of justice.

██ Finally, it is argued by the defendants that all of the prosecution exhibits were the products of illegal searches and seizures and thus their admission into evidence was reversible error. Here the arresting officers were investigating a particular crime, had a detailed description of the offenders and of the vehicle before locating and identifying the vehicle near the Faust Hotel. It was determined that two Negro males matching the description of the robbers had entered the hotel shortly after the robbery and were occupying two rooms with their female companions. These circumstances certainly established probable cause for the arrest of the defendants and the search of their rooms. No objection was made to any of the State's exhibits pursuant to a search of the rooms, except one exhibit which was the $109 seized from the defendant, Grashen. That objection was not well taken. Since the other exhibits were not objected to upon introduction into evidence or upon motion for a new trial, those objections are considered waived and not preserved for this appeal. All the items seized in the hotel rooms were incident to the defendants' arrest and were lawfully seized.

██ The search of the vehicle at 8:30 a. m. after the defendants were placed in custody at about 4:15 earlier that morning presents a different problem. A search of an automobile cannot be justified as a search incident to an arrest where the automobile has been taken to the police station at the time of the arrest and searched at the station some time after the arrest when the accused is safely in custody at the stationhouse, although there may be alternative grounds arguably justi-

fying the search of a car. *Chambers v. Maroney*, 399 US 42, 26 L Ed2d 419, 90 S Ct 1975. The only item found in the search of the automobile which was admitted into evidence at the trial was a 39¢ receipt dated November 14, 1967, from Noble's grocery. No objection was made to the admissibility of this exhibit on the basis that it had been illegally seized or by motion for a new trial. Although we can consider that this objection cannot be raised for the first time on appeal, we do not see how its admission prejudiced the defendants. Both defendants testified that they were in Noble's earlier the evening in question and had purchased a box of crackers and indicated that the exhibit was their receipt. They used the receipt to substantiate their own defense. Betty Kelly had stated that she had never seen the defendants prior to the robbery and they used the receipt to attempt to discredit Kelly's testimony, claiming that they could not have committed the robbery because they were in the store before the robbery, secured the receipt, and her testimony that she had never seen them before the robbery would mean that they could not have been the robbers, but that there were two unidentified Negroes.

For the reasons above stated, the judgment of the Circuit Court of Winnebago County is affirmed.

Judgment affirmed.

DAVIS, P. J. and MORAN, J., concur.