THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES KESTER, Defendant-Appellant.

(No. 74-212;

Third District—November 10, 1975.

STENGEL, J., dissenting.

James Geis and Robert Agostinelli, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James O. Christy, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The defendant, James Kester, was indicted for burglary on January 10, 1973. On January 16, 1973, the defendant was called three times in open court and failed to make an appearance. The Assistant State's Attorney filed with the court a motion for discovery and a request for the issuance of a bench warrant and an order forfeiting bond.

When the cause was called for arraignment ten days later, the defendant was again absent. The Assistant State's Attorney renewed his request that the court issue a bench warrant and an order forfeiting bond. Both motions were granted.

The defendant appeared in court on April 17, 1973, at which time the court provided him with a copy of the indictment and appointed the Public Defender of Peoria County as defense counsel.

Soon after the burglary indictment was returned, two unrelated indictments were also returned charging defendant with unlawful delivery of cannabis. During arraignment on these indictments, the court again offered to appoint the Public Defender. The defendant, however, objected, stating that he desired counsel other than the Public Defender because during incarceration he had been unable to meet with the Assistant Public Defender, recently assigned to his case. Over defendant's objection the Public Defender was appointed to the cannabis case.

On August 13, 1973, the cases were called for trial. On motion of defense counsel, the three charges were consolidated. Defendant withdrew his plea of not guilty and entered a plea of guilty to burglary and unlawful delivery of cannabis in a quantity of between 10 and 30 grams. The other cannabis charge was dismissed.

Defendant urges that he was "denied effective assistance of counsel due to a conflict of interest which resulted from counsel's acting as both prosecutor and defense counsel for the same client in the same criminal matter."

It appears from the record that defendant's appointed counsel also appeared on behalf of the People, up to and including April 17, 1973, in connection with the hearings and motions on the burglary charge, as set forth above.

Thus, we are presented with a case in which the attorney, who undertook to discharge the duties of defense counsel respecting the matter of guilt or innocence, had previously served as the Assistant State's Attorney in the same criminal proceeding. Although not apparent from the record, the defendant's brief states and the People's brief admits that the attorney left the employ of the State's Attorney's Office and assumed a position with the Public Defender during the first week of May, 1973.

We reverse on the ground that the conflict of interest here present subjected the defendant to prejudice.

■■ The right to the effective assistance of counsel is a fundamental right and entitles the person represented to the undivided loyalty of counsel. (*Glasser v. United States*, 315 U.S. 60, 86 L.Ed. 680, 62 S.Ct. 457.) In *People v. Stoval*, 40 Ill.2d 109, 111-12, 239 N.E.2d 441, our Supreme Court relied upon the following language from *Porter v. United States*, 298 F.2d 461 (5th Cir. 1962):

> " 'The Constitution assures a defendant effective representation by counsel whether the attorney is one of his choosing or court-appointed. Such representation is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others.' "

The case of *People v. Newberry*, 55 Ill.2d 74, 302 N.E.2d 34, strongly resembles the factual pattern present here. There, the defendant was convicted of voluntary manslaughter following a bench trial. The defendant then sought relief under the Post-Conviction Hearing Act (Ill. Rev. Stat., ch. 38, § 122—1 *et seq.*) alleging that his attorney had been the "original prosecutor of this case." During oral argument, it became apparent that defendant's trial and appellate counsel had served as head of the criminal division of the Cook County State's Attorney's office while the case was being prepared. No claim was made that defense counsel, while assistant State's Attorney, had any actual knowledge of defendant's case.

The Illinois Supreme Court held these "general allegations" insufficient to require an evidentiary hearing on the issue of defective representation.

*Newberry* stands for the proposition that no *per se* conflict of interest is created when an attorney first serves as a member of the prosecution staff and then moves over to become defense counsel. The ruling is predicated upon the absence of any allegations concerning counsel's knowledge, involvement or participation as a prosecutor with respect to the criminal proceeding in which he served as defense counsel.

Although based upon a similar factual pattern, *Newberry* requires an opposite result in the instant appeal. First, in *Newberry*, "[n]o further facts concerning counsel's involvement, if any, in this particular prosecution were alleged," other than those previously stated. That holding authorizes reversal whenever the prosecutor is personally involved in the same criminal proceeding in which he subsequently becomes defense counsel. Second, *Newberry* supports reversal because the facts concern-

ing counsel's involvement in this particular prosecution are not framed in terms of "general allegations" without the specificity required of a post-conviction petition; rather, the facts here are clearly set out in the record. Finally, *Newberry* requires reversal when the record suggests that the acts or omissions of counsel "might have produced a different result." The case at bar involved a negotiated plea of guilty. We note in this regard that during the hearing in aggravation and mitigation, defense counsel stated to the court the decision to forego raising various defenses to the three offenses with which the defendant was charged. Since defendant was represented, on the issue of guilt or innocence, by counsel who previously appeared on behalf of the People in the same criminal proceeding, we believe that the appointment of other counsel might have produced a different result.

In *People v. Darby*, 30 Ill.App.3d 37, 332 N.E.2d 64, a case which also presented a factual context related to that involved here, the appellate court, relying on *Newberry*, rejected a claim of conflict of interest and held no prejudice resulted to the defendant. There, the attorney, who appeared on behalf of the People at defendant's arraignment, also appeared one year later as appointed counsel on behalf of the defendant at the sentencing hearing. Since counsel's involvement or participation on behalf of the defendant was, unlike the instant appeal, unrelated to the question of guilt or innocence, but was only concerned with the matter of sentencing, we believe *Darby* is in harmony with the result reached here today.

The case of *People v. Gerold*, 265 Ill. 448, 107 N.E. 165, presents a factual context opposite that of the instant appeal. In *Gerold*, it was held that the trial court improperly permitted an attorney to appear on behalf of the People, since the attorney had for several years prior to the prosecution represented the defendant in respect to matters which formed the basis of the indictment. The court there engaged in an extensive discussion of the propriety of conflicting interests, including the following statement:

> "[An attorney] should undertake no adverse employment, no matter how honest may be his motives and intentions. [Citation.] He owes to his client fidelity, secrecy, diligence, and skill, and cannot take a reward from the other side. * * * [P]ublic policy strongly demands that one who has been employed on one side should not be permitted to appear on the other side." 265 Ill. 448, 477, 479.

See also *People v. Curry*, 1 Ill.App.3d 87, 272 N.E.2d 669, where the court, relying on *Gerold*, reversed the conviction. In *Curry*, the attorney had defended a client on the charge for which he was granted probation. Subsequently, this same attorney became a State's Attorney and repre-

sented the People at the probation revocation hearing in the same case.

*Gerold* and *Curry* are predicated upon the ethical obligations and professional responsibility of a lawyer to guard the confidences of his client. Neither case holds improper the reverse situation, presented here, in which an attorney first appears on behalf of the prosecution and subsequently moves over to become defense counsel.

The People argue that no prejudice resulted as the defendant stands to benefit from the knowledge gained by his attorney of the People's trial tactics and other confidential matter relative to his case. We believe, however, the People's contention overlooks the fact that counsel in this case performed inconsistent duties and represented conflicting interests. *People v. Gerold*, 265 Ill. 448, 107 N.E. 165.

The prosecutor is ordinarily committed to the view that the evidence supports a guilty verdict against the defendant. (ABA standards Relating to the Prosecution Function § 3.9 (1971) (standards neither adopted nor approved by the Supreme Court of Illinois).) This obligation does not comport with the role of defense counsel—to preserve his client's confidences and zealously pursue his client's interests. ABA Standards Relating to the Defense Function § 3.5, Commentary (1971).

We believe that the right to effective assistance of counsel entitles a defendant to be represented by someone who has not formed an opinion on his guilt.

■■ In *People v. Stoval*, 40 Ill.2d 109, 239 N.E.2d 441, the defendant's court-appointed counsel was a member of the law firm which represented the victim of the crime with which the defendant was charged. Although no showing was made that the attorney conducted the defense without diligence and resoluteness, the court stated as follows:

> "* * * [S]ound policy disfavors the representation of an accused, especially when counsel is appointed, by an attorney with possible conflict of interests. It is unfair to the accused, for who can determine whether his representation was affected, at least, subliminally, by the conflict. Too, it places an additional burden on counsel, however conscientious, and exposes him unnecessarily to later charges that his representation was ·not completely faithful. In a case involving such a conflict there is no necessity for the defendant to show actual prejudice. *Glasser v. United States*, 315 U.S. 60; *Goodson v. Peyton* (4th cir.), 351 F.2d 905." 40 Ill.2d 109, 113.

The rationale of *Stoval* applies in the instant appeal. The victim of the crime in *Stoval*, like the prosecutor in the case at bar, seeks a conviction, albeit for different reasons. It cannot be determined from the record whether counsel's previous association with the State's Attorney in-

fluenced him in any manner. But this is precisely what *Stoval* sought to avoid.

We have examined cases from other jurisdictions, both State and Federal, containing related factual contexts. One line of cases proceeds upon the assumption that in order for a conflict to exist, the attorney must somehow be personally involved on both sides of the case. Thus, in *State v. Gibbons*, 1 Ore.App. 374, 462 P.2d 680 (1969), the defendant's lawyer had previously served as District Attorney. In this capacity, he had signed the defendant's indictment and appeared in court for the State in two preliminary matters. Though the defendant did not raise the issue, the Court of Appeals of Oregon resolved the question, thus suggesting the possibility of plain error. The court assumed full disclosure was made by counsel to both the State and the defendant and each consented. Since the case was vigorously defended and no apparent prejudice resulted, the court did not reverse. Nevertheless, the court stated that it could not conceive of any circumstance in which a repetition would not be ground for reversal of a conviction.

The case of *Kelly v. Peyton*, 420 F.2d 912 (4th Cir. 1969), presents a factual context similar to *Gibbons*. In *Kelly*, the defendant's lawyer was also the justice of the peace, and thus was responsible for determining that there was probable cause for the defendant's arrest before signing the arrest warrants. Since the defendant waived indictment and was tried on the warrants, the court held that prejudice resulted—in defending his client, the lawyer might have to attack the very warrants he had authorized.

Both *Gibbons* and *Kelly* stand for the proposition that a lawyer representing parties whose interests are conflicting cannot act with that degree of loyalty which effective representation requires if he is employed by the prosecuting sovereign and charged with duties relating to the investigation or prosecution of that case. *Kelly v. Peyton*, 420 F.2d 912 (4th Cir. 1969).

■■ On the other hand, when the attorney is not personally involved on both sides of the case or his connection with the particular case is more remote, the danger of prejudice is minimized. (*People v. Newberry*, 55 Ill.2d 74, 302 N.E.2d 34; *People v. Darby*, 30 Ill.App.3d 37, 332 N.E.2d 64.) For example, in *Goodson v. Peyton*, 351 F.2d 905 (4th Cir. 1965), relied upon in *Kelly*, the lawyer appointed by the State court to serve as defense counsel was the prosecuting attorney for a neighboring county. No actual prejudice was found, though the court suggested that a different result might obtain if defense counsel was the prosecuting attorney for the county in which the trial was held. (*Cf. Jones v. Baker*, 406 F.2d 739 (10th Cir. 1969), where the defendant's lawyer in a State criminal

proceeding also served as a part-time municipal magistrate. No prejudice was found since the record did not contain any specific indication of a conflict of interest.)

The passage of time may also vitiate the inference of a conflict of interest. (See *People v. Darby*, 30 Ill.App.3d 37, 332 N.E.2d 64.) Thus, in *State v. Jenkins*, 203 Kan. 354, 454 P.2d 494 (1969), no error was found when the appointed defense counsel had served as deputy county attorney and has prosecuted the defendant for a similar offense a few years before. (*Cf.* the reverse situation in *People v. Wright*, 23 Ill.App.3d 43, 318 N.E.2d 102, where the prior attorney-client relationship was held not to suggest any impropriety or inference thereof on the part of the assistant prosecutor who did not acquire any usable information from an unrelated criminal matter a few years before.)

Finally, even though a conflict of interest may appear, no prejudice results if the defendant's interests are otherwise protected. For example, in *Commonwealth v. Wakeley*, 433 Pa. 159, 249 A.2d 303 (1969), the defendant contended that because counsel at his trial had been acting district attorney at the time he was indicted, a conflict of interest existed. Since the defendant was represented at trial by two attorneys, the court held that if one was in conflict, the other was in a position to protect his interests.

A second line of authorities hold that the nature and duties of a public prosecutor are inherently incompatible with the obligations of a criminal defense counsel. (See *People v. Cross*, 30 Ill.App.3d 199, 331 N.E.2d 643, in which the court held that an attorney's representation of the defendants, on the one hand, and his affiliation with the Attorney General's office in handling inheritance tax matters, on the other, constituted a per se conflict of interest.) This result obtains in a State prosecution, though the representation of defendant does not directly conflict with appointed counsel's official duties as a city attorney—to prosecute violators of municipal ordinances. (*People v. Rhodes*, 12 Cal. 3rd 180, 115 Cal. Rptr. 235, 524 P.2d 363 (1974); *Karlin v. State*, 47 Wis.2d 452, 177 N.W.2d 318 (1970).) The rationale for this rule is twofold: first, because city police officers are the principal source of witnesses relied upon by a city attorney, there will inevitably arise a struggle between, on the one hand, counsel's obligation to represent his client to the best of his ability and, on the other hand, a public prosecutor's natural inclination not to anger the very individuals whose assistance he relies upon in carrying out his prosecutorial responsibilities; second, public confidence in the integrity of the criminal justice system could be adversely affected by the appearance of impropriety incident to a

public prosecutor's private representation of a criminal defendant. (But see *Jones v. Baker,* 406 F.2d 739 (10th Cir. 1969), where the court held there was no conflict per se if the defendant's appointed counsel in a State prosecution also served as municipal magistrate.) *Cf. Hosford v. Eno,* 41 S.D. 65, 168 N.W. 764 (1918), a civil case, where the court held that a city attorney, charged with the duty of prosecuting violators of city ordinances, could not accept employment to represent a defendant against a criminal charge, arising out of the same transaction, upon which was based the prosecution for the violation of a city ordinance.

We believe the authorities set out above, including *Newberry, Darby, Gibbons* and *Kelly,* support the proposition that a lawyer cannot act with that degree of loyalty which effective representation requires if he first appears on behalf of the prosecution and subsequently moves over to become defense counsel in connection with the issue of guilt or innocence in the same criminal proceeding. (See also *People v. Cross,* 30 Ill.App.3d 199, 331 N.E.2d 643.) These authorities emphasize that the personal participation by defense counsel on both sides can have no other effect than to create an improper appearance.

■■ Nor can it be said that there was a knowing waiver by the defendant of his right to representation by counsel unimpeded by any conflict of interests. The record suggests only that defendant objected to the appointment of the Public Defender because of the absence of any meetings with counsel during his incarceration. The record fails to show that counsel disclosed to the defendant a conflict of interest. (ABA Standards Relating to the Defense Function § 3.5(A) (1971).) It is immaterial whether the conflict arises by design or by inadvertence. *People v. Curry,* 1 Ill.App.3d 87, 272 N.E.2d 669.

■■ The defendant's other contention relates to the trial court's failure to admonish him that the sentence imposed included a mandatory parole term, in accordance with *People v. Wills,* 61 Ill.2d 105, 330 N.E.2d 505. This argument must be rejected inasmuch as *Wills* applies prospectively to guilty pleas taken subsequent to May 19, 1975, and not to defendant's plea which was entered on August 13, 1973.

For the reasons stated the plea of guilty is vacated and the cause remanded to the circuit court of Peoria County for further proceedings consistent with this opinion.

Reversed and remanded.

BARRY, J., concurs.

Mr. JUSTICE STENGEL, dissenting:

I must respectfully dissent from the majority opinion.

The issue in this case is whether the defendant was denied the effective assistance of counsel. Defendant asserts that he was so denied, because of an alleged conflict of interest arising from the fact that his attorney had previously served as assistant State's Attorney in preliminary matters concerning the same criminal proceeding.

The majority places great reliance on its interpretation of *People v. Newberry*, 55 Ill.2d 74, 302 N.E.2d 34 (1973). In *Newberry*, defendant's appointed counsel had been employed by the State's Attorney's office while defendant's case was prepared, but had no direct involvement in that case, although he served as head of the Criminal Division of the Cook County State's Attorney's office. The court affirmed the conviction, holding that under these circumstances, defendant's general allegations of constitutionally defective representation were insufficient. The majority states that the holding in *Newberry* "* * * authorizes reversal whenever the prosecutor is personally involved in the same criminal proceeding in which he subsequently becomes defense counsel."

I cannot agree with this reading of *Newberry*. While never directly addressing the issue before us here, the Supreme Court did state:

> "We do not believe the premise urged by defendant—that a disqualifying conflict of interest requiring reversal exists whenever a former assistant prosecutor, employed as such at the time of defendant's indictment, subsequently is appointed defense counsel—is either necessary or desirable. We perceive no inherent prejudice to defendant in that factual setting, and, conceivably, some advantage could inure to defendant, although it is neither claimed nor established here that defense counsel, while assistant State's Attorney, had any actual knowledge of defendant's case." 55 Ill.2d 74, 77.

This passage, taken with the court's holding, suggests two points overlooked by the majority. First, the conflict *per se* rule is not applicable where a prosecutor has turned defense counsel. Secondly, the court suggests that where the former prosecutor was actually involved in defendant's case, rather than there being prejudice, benefits could quite possibly inure to the defendant.

I also disagree with the majority's interpretation of *People v. Darby*, 30 Ill.App.3d 37, 332 N.E.2d 64 (4th Dist. 1975). There a similar contention was raised where the attorney who had appeared on behalf of the People at defendant's arraignment subsequently represented defendant at the sentencing hearing as an assistant public defender. The court rejected defendant's claim that a conflict of interest existed, noting that

the attorney did not have "* * * any connection with the prosecution of defendant other than his routine attendance at the arraignment." The court further noted that as there then was "* * * no allegiance * * * to the prosecutorial function of the State," no conflict per se existed as in *Stoval* and *Meyers*. Finally, even though in *Darby* the attorney had been personally involved in the same criminal proceeding in which he subsequently became defense counsel, the court there cited *Newberry* for the proposition that no inherent prejudice existed, contrary to the interpretation of *Newberry* by the majority here. I do not find persuasive the majority's assertion that *Darby* is distinguishable because the attorney was involved in the sentencing hearing and not a determination of guilt or innocence. It is so well established that a sentencing hearing is a critical stage of the proceedings that a citation is unnecessary. Surely a defendant is entitled to the same standard of representation at each critical stage. This is particularly evident when one considers that the sentencing hearing in *Darby* was a contested proceeding following a jury trial, whereas in this case, the guilty plea and sentence were negotiated. Thus, the same standard should be equally applicable in both cases.

There are certain facts in evidence which the majority has failed to consider in reaching its decision. Most significant is that on August 13, 1973, while submitting his plea of guilty to the charge of burglary and one charge of unlawful delivery of cannabis, the trial court admonished the defendant fully in compliance with Supreme Court Rule 402. The defendant was asked, "Are you satisfied with the representation provided you so far by the public defender's office?" The defendant answered "Yes, your honor." (Transcript at 111.) In addition, the court inquired of defendant, "Are you making this plea of guilty voluntarily and as a result of your own decision?" The defendant answered, "Yes, I am." (Transcript at 118.)

It appears to me that it is clear from the foregoing and from the entire record that defendant was satisfied with his attorney's services and should not now be heard to complain.

The cases relied upon by the majority are concerned with two situations: where the prosecutor may use confidences obtained from defendant while the prosecutor was his defense counsel and where the defendant's attorney has present commitments to others in positions antagonistic to the defendant. Neither situation exists here. The attorney had left the office of State's Attorney and was thus committed only to the defendant. Any information which the attorney had would be prosecutorial information concerning the defendant or that office's trial tactics, which could be of benefit to the defendant and certainly would not

prejudice his rights. In *Harrison v. United States*, 387 F.2d 614 (5th Cir. 1968), defendant's attorney had previously defended the government's informer and chief witness against the defendant. The court there held that no conflict existed, and that this prior representation of the government's witness would probably help the defendant.

To state that the attorney's assistance here may be ineffective because of preformed notions concerning defendant's guilt due to the attorney's prior prosecutorial involvement is to ignore the fact that "by education, training and practice members of the legal profession have been inculcated with the principle of objectivity." (*People v. Stoval*, 40 Ill.2d 109, 115 (Justice House, dissenting).) Ignoring the fact that the attorney's prosecutorial participation in this case was only as to preliminary matters, by the time of trial, most defense attorneys have made some assessment of their client's guilt, based on their pretrial investigations. Therefore, this charge could also be made against them, and would be equally inappropriate.

I cannot believe that lawyers appointed to represent indigents are so likely to be lacking in diligence, competence or professional honesty.

Even if some conflict could be imagined, as the majority opinion does, defendant should be deemed to have waived the issue. The proceedings below consisted of a negotiated plea of guilty as opposed to a contested trial. The record reflects that defendant's guilty plea was voluntarily and knowingly made, with extensive participation both by defendant and by his attorney. In *Martin v. United States*, 256 F.2d 345 (5th Cir. 1958), *cert. denied*, 358 U.S. 921, 3 L.Ed.2d 240, 79 S.Ct. 294, defendant challenged his conviction following a guilty plea, contending an alleged conflict of interest arising from his appointed counsel's representation of other codefendants. After reviewing the record, the court stated at page 349: "[S]ince * * * the guilty plea was voluntary the appellant must be said to have waived the conflict of interest theory." See also *People v. Richardson*, 16 Ill.App.3d 830, 306 N.E.2d 886 (3d Dist. 1974).

The United States Supreme Court, in *Tollett v. Henderson*, 411 U.S. 258, 267, 36 L.Ed.2d 235, 243, 93 S.Ct. 1602, 1608 (1973), a case involving a guilty plea on the advice of counsel who had failed to make inquiry into the composition of the grand jury, held, as follows:

> "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the

guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441 at 1449, 25 L.Ed.2d 763 (1970)]."

It is interesting to note that the majority opinion takes the opposite view of the American Bar Association Standards for Criminal Justice relating to The Prosecution Function and The Defense Function where they state, on the subject of possible conflict, at page 216 (1971):

"In all of these situations the controlling consideration is the avoidance of any possibility of division or dilution of loyalties * * *,

[T]here are advantages to the operation of the adversary system if lawyers can avoid being stereotyped in their roles. See THE PROSECUTION FUNCTION, Introduction, *supra*, at 20-21. Obviously, in our system of institutionalized prosecution offices, unlike England, for example, it is difficult if not impossible for prosecutors to appear in the defense role. More feasible is the interchange of roles by having experienced defense counsel appointed as special prosecutors from time to time. *The long range benefits of interchange, however, are such that lawyers who have been trained in prosecution offices should be encouraged to devote some period of their professional careers in defense work, whether privately or as a public defender, after they have left prosecution offices.* Correspondingly, public defender staff members should be encouraged to move into prosecution offices." (Emphasis added.)

In the absence of a clear and specific showing of prejudice, the issue here should be controlled by the criteria governing constitutionally effective assistance of counsel. The record here negates the appellant's claim on this point. On the contrary, I believe the appellant was helped rather than harmed by his counsel's former experience as a prosecutor in light of his counsel's efforts.

In my opinion the conviction should be affirmed.