THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID PRECUP *et al.*, Defendants-Appellants.

Fourth District   No. 13154

Opinion filed July 5, 1977.

CRAVEN, P. J., dissenting.

Richard J. Wilson and Thomas Nelson, both of State Appellate Defender's Office, of Springfield, for appellant Terry Lee Brummell.

James L. Palmer, of Scholz, Staff & Brickman, of Quincy, for appellant Steven Harness.

F. Donald Heck, of Quincy, for appellant David Precup.

Robert J. Bier, State's Attorney, of Quincy (G. Michael Prall and Robert C. Perry, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendants were jointly tried before a jury and appeal their respective convictions of armed robbery. No issue is raised upon the sentences imposed and no issue of the sufficiency of the evidence to convict argued.

The Nut Shell Tavern, its operator, Mrs. Nutt, and a patron, were robbed by three men with stocking masks and a shotgun at about 12:30 a.m. on August 4, 1974. Two officers observed the three flee the tavern and attempted to pursue on foot. The shotgun was dropped by the running men. Two of the men were observed to enter an automobile described in evidence. These officers returned to their car but were not immediately able to locate the automobile which they described. Following some investigation, however, they discovered the location of such an automobile and following a surveillance of their activities, Harness and Brummell were arrested several hours following the robbery. The car belonged to defendant Brummell. Defendant Precup was arrested the evening of the following day.

Precup was positively identified by Mrs. Nutt and the patron, both during trial and at a lineup. Neither Harness nor Brummell was directly identified by the victims. Mrs. Nutt testified that a pair of boots belonging to Harness and introduced into evidence appeared to be the boots which she observed on one of the robbers as she lay on the floor during the robbery. She noticed the boots because she was expecting to be kicked. A nylon stocking and a paper bag identifed as similar to those used in the robbery were found in the Brummell car.

Defendant Precup argues that "[i]t is reversible error to permit

testimony in the State's case in chief from a police officer which brings out defendant's criminal record."

Officer Collins was, in fact, testifying concerning a post-arrest interview with defendant Brummell. The record shows the following:

"Q. Would you tell us what else you asked him, as you recall?

A. I asked him if he knew Dave Precup and he indicated, only slightly; that he'd known him to have been paroled from the penitentiary * * *.

MR. ADAMS: Objection, Your Honor.

THE COURT: Objection sustained. Let me suggest to you, Mr. Witness, that you refrain from voluntary answers and merely answer the question asked of you."

■■ It is not argued that the State's Attorney sought to, or did, elicit the testimony as was the fact noted in *People v. Colston* (1967), 81 Ill. App. 2d 75, 225 N.E.2d 801; *People v. Pitts* (1971), 1 Ill. App. 3d 120, 273 N.E.2d 664; *People v. Smith* (1973), 12 Ill. App. 3d 295, 297 N.E.2d 625. The record shows colloquy concerning the court's offer to admonish the jury to disregard the statement and counsel's agreement that such admonition should not be made.

Here, the identification was positive. The unresponsive, unsolicited remark by the witness to which the court sustained objection does not require reversal. *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590; *People v. Christy* (1976), 43 Ill. App. 3d 1004, 358 N.E.2d 8.

■■ By supplemental brief, Precup raises the additional issue that the identifications made at trial by the proprietor and patron were tainted and that it was error to deny a motion to suppress. The issue was raised at trial when Precup advised his attorney that the police had taken his photograph. Colloquy of record indicates that counsel anticipated that the photographs were displayed to the witnesses prior to a lineup. Upon cross-examination of the proprietor and an offer of proof by the prosecution, the record shows that neither witness had seen defendant's photograph prior to the lineup at which they identified Precup. Such lineup was held on the day following the robbery. The witnesses had seen the photographs several days before the trial. Each witness made a positive in-court identification based upon independent recollection and observation of Precup's build, hair color and style, mustache and manner of moving. We have examined the authorities cited by defendant which concern a display of photographs to witnesses prior to a lineup and at a time when defendant was in custody. The sequence of events in this record indicates that it cannot be said that the display of photographs could have resulted in an "irreparable misidentification" which would render the in-court identification inadmissible. *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819.

Defendants Harness and Brummell seek to raise certain issues which are stated to be "plain error" under Supreme Court Rule 615, and arise in the fact that the public defender was appointed and represented both Harness and Brummell at the joint trial. Precup, Harness and Brummell presented testimony that each was at a tavern, the Establishment, arriving at different times between 7 p.m. and 10:30 p.m. Several witnesses for the defense testified to the presence of each defendant and observing them at various times. Precup and Harness testified that the three were together at the tavern. Harness testified that he was there with Brummell and that they, Harness and Brummell, stayed until closing time at 1 a.m. Precup and Pam Markert, a girl with whom he was living, testified that they left about 11 p.m. and that at about 1 a.m. Harness and Brummell came to the apartment and stayed for about an hour drinking beer. Harness testified that he left with Brummell to go to the Precup apartment where they stayed until about 2 a.m. when they left to go to Hannibal. Brummell did not testify.

During the prosecution's case in chief, police officers testified to oral *Miranda* warnings given each defendant, and signed statements of such warnings by each were introduced into evidence. The officers then testified as to each statement given by the respective defendants. The testimony as to the statements of Precup and Harness was essentially consistent with the alibi testimony.

The testimony as to the out-of-court statement by Brummell was that he stated that he had not seen either Precup or his lady, Pam, during the evening, that he left the Establishment with Harness at closing, but that neither he nor Harness went to the Precup apartment and that they drove around in an area unidentified in the record until the time of the arrest.

Upon appeal Harness urges that the trial court should have *sua sponte* ordered a severance when it appeared that the testimony of Collins would show that differing statements by Harness and Brummell were made concerning their activities following the closing of the Establishment. Harness and Brummell, again seeking relief under Supreme Court Rule 615, each argue that their representation by one appointed attorney denied each the effective assistance of counsel and deprived each of a fair trial.

■■ It is to be noted that in this case no defendant undertook to inculpate another, each denied participation in the robbery. Precup and Harness each denied his participation and denied participation by Brummell, both in their testimony and in the oral statements before trial. The oral statement of Brummell made after his arrest denies his participation and that of any defendant in the robbery. In the context of alibi defenses in relation to the time of the robbery, the defenses are consistent. In such context the defenses were compatible.

Upon the issue of severance by the *sua sponte* act of the court, Harness cites only *People v. Wheeler* (1970), 121 Ill. App. 2d 337, 257 N.E.2d 587. In *Wheeler*, the State's Attorney advised the court prior to trial that there would be testimony concerning admissions by one co-defendant which implicated the other in the crime through ownership of the gun. For reasons not apparent, defendant's counsel did not, however, request a severance. We have found no other case in which the duty of the trial court to sever was framed in terms of a *sua sponte* requirement. It is to be noted that, in *Wheeler*, the fact of antagonistic positions in the context of one defendant implicating the other was made known to the court prior to the trial. In such context *Wheeler* is not authority directed to the question of a *sua sponte* severance by the court after the trial has begun and progresses substantially.

In *People v. McCasle* (1966), 35 Ill. 2d 552, 221 N.E.2d 227, and *People v. Merritt* (1973), 16 Ill. App. 3d 72, 305 N.E.2d 579, it was contended that there should have been a *sua sponte* severance of trials by the court. In *McCasle*, each defendant had a separate alibi. The court determined that there were no antagonistic interests or inconsistent defenses. *Merritt* held that prejudice from joinder in trial must be shown prior to trial.

Section 114—8 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat.1973, ch. 38, par. 114—8) provides that if it appears that a defendant is prejudiced by joinder of related prosecutions of defendants, the court may order separate trials or grant a severance of defendants.

It is consistently held that a motion for severance of jointly indicted defendants must be made before trial, and that an issue of prejudice from joinder cannot be raised for the first time on appeal. (*People v. Rutledge* (1973), 14 Ill. App. 3d 290, 302 N.E.2d 425; *People v. Hoover* (1976), 35 Ill. App. 3d 799, 342 N.E.2d 795, *appeal denied* (1976), 63 Ill. 2d 553. In *Hoover*, a motion for severance made after the commencement of trial was based upon the contention that the post-arrest statements of co-defendants were contradictory. This court followed the rule of timeliness in making a motion for severance in *People v. Appold* (1976), 39 Ill. App. 3d 814, 350 N.E.2d 511.

In *People v. Miner* (1977), 46 Ill. App. 3d 273, 360 N.E.2d 1141, the trial court denied a motion for severance upon the grounds that the defenses were antagonistic. At the time of the motion it was not shown that the defenses were, in fact, antagonistic but "at most mere apprehension that the defenses would prove to be antagonistic." (46 Ill. App. 3d 273, 284.) During the course of the trial, however, it developed that the testimony of the defendants implicated each other and was antagonistic in fact. The court held, however, that there was no reversible error because at the time of the ruling upon the motion for severance prior to trial there had been no showing of the fact of antagonistic defenses. The court expressly

rejected argument that a showing of antagonistic defenses may be made either prior to, or during, trial and referred to supreme court opinions requiring that severance be procured prior to trial.

It is argued that the differing statements of Harness and Brummell create "a basic antagonistic relationship." Antagonistic defenses in the context of severance have been confined to those instances where one or more co-defendants testifies implicating the other. *People v. Ware* (1968), 39 Ill. 2d 66, 233 N.E.2d 421; *People v. Johnson* (1970), 46 Ill. 2d 266, 265 N.E.2d 869; *People v. Augustus* (1976), 36 Ill. App. 3d 75, 343 N.E.2d 272; *People v. Halluin* (1976), 36 Ill. App. 3d 556, 344 N.E.2d 579.

■■ In *People v. Davis* (1976), 43 Ill. App. 3d 603, 357 N.E.2d 96, *appeal denied* (1977), 65 Ill. 2d 578, the court pointed out the distinction between contradictory defenses and antagonistic defenses, saying:

> "Huff testified and was available for cross-examination by defendant. Huff testified that neither he nor defendant stabbed Negron. Huff also denied making any statement to Eshoo. On the other hand, defendant testified that Huff stabbed Negron. Though the defenses contradicted, Huff was helpful to defendant, not antagonistic. To be antagonistic there must be a showing of true conflict in the several defenses; for example, where each defendant attributes the cause of an accident to the wrongful actions of the other (*People v. Clark* (1972), 50 Ill. 2d 292, 294, 278 N.E.2d 782); where each defendant condemns the other and each declares the other will testify to facts exculpatory of himself and condemnatory of his co-defendant (*People v. Braune* (1936), 363 Ill. 551, 555, 2 N.E.2d 839); where the co-defendant's confession implicating defendant is received into evidence with only an instruction to the jury limiting its admissibility to the maker of the statement (*People v. Sweetin* (1927), 325 Ill. 245, 156 N.E. 354); and where each co-defendant makes an admission or confession orally and the references to the co-defendant applying for the severance are not eliminated from the testimony (*People v. Barbaro* (1946), 395 Ill. 264, 271, 69 N.E.2d 692)." (43 Ill. App. 3d 603, 610, 357 N.E.2d 96, 102.)

(For purposes of clarification, Huff did not join in the motion for severance.)

The court held that under such circumstances defendant had not shown that the defenses were antagonistic and that it was not error to deny a severance. The court distinguished *Wheeler*, pointing out that the out-of-court admission implicated the defendant.

The argument of Harness and Brummell that they were denied the effective assistance of counsel incorporates similar considerations and is essentially the reverse side of the coin. In *People v. Husar* (1974), 22 Ill.

App. 3d 758, 318 N.E.2d 24, *appeal denied* (1975), 58 Ill. 2d 594, the court stated that an attorney may be appointed where it does not appear that a conflict between the defendants can be anticipated and that the record must show that such possibility exists at the time of appointment. (See also *People v. Brown* (1976), 36 Ill. App. 3d 416, 343 N.E.2d 700.) Harness and Brummell rely upon *Glasser v. United States* (1941), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457. These facts differ substantially from those in the cited *Glasser v. United States*, for there, in a conspiracy trial, the appointed attorney advised the trial court prior to appointment that representing the two defendants would prevent adequate cross-examination of the witness to the conspiracy.

Harness and Brummell argue that a conflict of interest should be held to arise *per se*, citing *People v. Cross* (1975), 30 Ill. App. 3d 199, 331 N.E.2d 643. There, the retained counsel for defendant was a special assistant attorney general. It was pointed out that the Attorney General had a duty to represent the People in criminal matters. In related instances of a conflict of interest, we find that in *People v. Meyers* (1970), 46 Ill. 2d 149, 263 N.E.2d 81, defendant's attorney also represented defendant's wife upon a contingent fee in a dramshop action related to the offense and the outcome of the criminal proceeding would affect the recovery of a civil action. In *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, defendant's attorney also represented the store alleged to have been burglarized. In each instance, the "commitment to others" arose through a relationship creating an interest, usually financial, in an attorney, which relationship was not directly related to the defense of the defendant, but nonetheless might, in effect or in appearance, inhibit the representation of the defendants. In *People v. Fuller* (1974), 21 Ill. App. 3d 437, 442, 315 N.E.2d 687, 690, this court said:

> "To summarize, we hold that Illinois has adopted a per se rule where counsel's conflict of interest arises from a commitment to others, but that it has not, thus far, adopted such a rule where the conflict arises in another fashion."

We have found no instances where a rule finding a *per se* conflict as such has been followed where there is representation of co-defendants. Rather, the rule is that an actual existing conflict of interest in defenses must appear.

■■ Harness and Brummell urge that the diverging accounts of their activities after 1 a.m. denied them effective assistance of counsel for under his professional responsibility he could not vigorously cross-examine or impeach either or make an appropriate motion *in limine*. The common representation would not appear to interfere with the making of a motion or motions of such character.

■■ As to the claim of Harness, it is not apparent how there could be

cross-examination or impeachment of Brummell when the latter did not testify. Insofar as the actual alibi concerning the time span of the robbery, Harness is supported by all of the defense evidence, as well as by the evidence of Brummell's statement.

Brummell had the benefit of all of the testimony tending to show an alibi for the period of time relating to the robbery. He was not impeached in terms of his testimony for he did not testify. The effect of his statement was contradicted by the testimony of the police concerning the pursuit and surveillance of Brummell's car, and was contradicted by the testimony of Precup and Pam Markert.

We note that it is not contended that the testimony concerning the oral statements of the defendants was inadmissible in the context that any statement tended to implicate another defendant in the commission of the armed robbery, and the defenses cannot be said to be antagonistic in the context stated in *People v. Davis* (1976), 43 Ill. App. 3d 603, 357 N.E.2d 96, *appeal denied* (1977), 65 Ill. 2d 578.

Harness further cites *People v. Barren* (1975), 32 Ill. App. 3d 78, 335 N.E.2d 779, *People v. Falconer* (1975), 33 Ill. App. 3d 563, 338 N.E.2d 216, and *People v. Kester* (1975), 33 Ill. App. 3d 262, 337 N.E.2d 44. In the latter case appointed counsel had appeared as a prosecutor in earlier phases of the prosecution and it does not appear to relate to this issue. In *Barren*, the asserted conflict arose where one defendant pleaded guilty. It was there said that the only antagonistic effect which might arise would be if the one pleading guilty testified implicating the other in the offense. We have noted that there is no aspect in this case of one defendant implicating the other. *Falconer* was a post-conviction proceedings wherein it was contended that the attorney could not pursue testimony said to be prejudicial to a co-defendant and it was asserted that defendant had conformed his testimony as to that of the co-defendant. The denial of post-conviction relief was affirmed for the reason that some specific instance of prejudice must be pointed out and some real conflict of interest shown, citing *People v. Robinson* (1969), 42 Ill. 2d 371, 247 N.E.2d 898.

In *People v. Brown* (1976), 36 Ill. App. 3d 416, 343 N.E.2d 700, it was contended that the court erred in denying a motion of counsel to withdraw when it was pointed out that one defendant would testify that she did not know that the property was stolen and that the second defendant would corroborate such testimony, but that he could not testify because he was subject to impeachment by reason of prior convictions. Neither defendant testified. The court said that it was not error to deny a severance, citing *People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356, and *People v. Humphrey* (1970), 129 Ill. App. 2d 404, 262 N.E.2d 721, each holding that defenses of co-defendants are not antagonistic because

one of the co-defendants is subject to impeachment by reason of his prior convictions.

In *People v. Holman* (1976), 43 Ill. App. 3d 56, 356 N.E.2d 1115, a statement to police by one defendant admitted that defendants were in Aurora and so differed from the evidence introduced upon the question of time. The court concluded that such statement exculpated defendants and did not constitute an admission that the defendants committed the robbery, and that the fact that the credibility of the statement was attacked did not render it incriminating. Since there was no implicating of any defendant in the offense, the defenses were not antagonistic and it was not error to deny a motion for severance or to fail to appoint separate counsel. Again, in *People v. Brooks* (1972), 51 Ill. 2d 156, 281 N.E.2d 326, each defendant testified to an alibi which was impeached by his out-of-court statement. It was determined that the impeachment of the respective alibis did not make the defenses antagonistic.

■■ We conclude that there is no showing of such plain error under Supreme Court Rule 615 as to require reversal.

The judgment of conviction is affirmed.

Affirmed.

GREEN, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN, dissenting:

I dissent.

Defendants Harness and Brummell put forth an alibi defense. Each was consistent only up to the time the crime was committed. Thereafter each defendant told a different story as to the events of the remainder of the evening. The statement of defendant Brummell, as related by a State witness, could be used to impeach the testimony of defendant Harness.

I agree with the general rule set forth by the majority that an attorney is placed in a conflict situation by the representation of two defendants only when the defenses of those defendants are antagonistic. (*People v. Smith* (1974), 19 Ill. App. 3d 138, 310 N.E.2d 818; *People v. Dickens* (1974), 19 Ill. App. 3d 419, 311 N.E.2d 705.) The alibi defenses here were antagonistic and mutually exclusive.

A like situation arose in *People v. Bopp* (1917), 279 Ill. 184, 116 N.E. 679, where two defendants put forth different alibi defenses. In reversing defendant Bopp's conviction because his co-defendant's attorney was assigned to represent him, the court said:

> "The defenses of these two defendants were not the same. Each was an alibi, but each was dependent upon different testimony from the other. It might well be that testimony tending to

exculpate one would tend to inculpate the other." (279 Ill. 184, 191.)

While the alibis at issue in *Bopp* were diametrically opposed, the theory underlying the court's opinion is equally applicable here where only the post-crime alibis were divergent.

We need not so ration legal representation as to impose upon counsel the burden of conflicting representation. Defendants Harness and Brummell were denied effective assistance of counsel and a fair trial. I would reverse and grant a new trial.